**Stacy L. EWELL, et al., Plaintiffs,**

**v.**

**Edward W. MURRAY, et al., Defendants.**

**Civ. A. No. 92–0079–R.**

United States District Court,
W.D. Virginia,
Roanoke Division.

Feb. 12, 1993.

Harold J. Krent, University of Virginia School of Law, Charlottesville, VA, for plaintiffs.

Mark Ralph Davis, Office of Atty. Gen., Richmond, VA, for defendants.

## MEMORANDUM OPINION

TURK, Chief Judge.

Stacy L. Ewell, an inmate at Buckingham Correctional Center, and Michael Corley, Daniel James, and Shawn Pender, inmates at Brunswick Correctional Center, have filed this civil action pursuant to 42 U.S.C. § 1983 with jurisdiction vested pursuant to 28 U.S.C. § 1343. In their original complaint, plaintiffs challenge the constitutionality of amended Virginia Department of Corrections Division of Adult Institutions Operating Procedure (DOP) 806, which establishes policy and procedure for awarding Good Conduct Allowance (GCA) credits to inmates. In their amended complaint, they add a constitutional challenge to amended DOP 861, which establishes policy and procedure for inmate discipline, including revocation of previously earned GCA credits. Plaintiffs challenge both amended regulations on *ex post facto* and due process grounds.

In April of 1990, the Commonwealth of Virginia enacted legislation, Va.Code §§ 19.2–310.2 through 310.7, which requires incarcerated felons to provide a blood sample to the Department of Corrections for deoxyribonucleic acid (DNA) analysis and storage. The statute applies to every person convicted of a felony on or after July 1, 1990, every person convicted of a felony sex offense who was incarcerated on or after July 1, 1989, and all felons incarcerated as of July 1, 1990. In *Jones v. Murray*, 962 F.2d 302 (4th Cir.1992), the United States Court of Appeals for the Fourth Circuit upheld this legislation against a Fourth Amendment challenge. The Court also held that the statute violated the *Ex Post Facto* Clause only to the extent that it could be enforced to preclude an inmate's release on mandatory parole[1] six months prior to his final discharge date.

As a means of enforcing the DNA legislation, the Virginia Department of Corrections (VDOC) amended its regulations regarding the earning of GCA credits and inmate discipline for institutional infractions. DOP 806 sets forth a four level classification system under which inmates earn GCA credits. Depending on the class in which the inmate is placed, he earns 0 days credit in Class IV, 10 days in Class III, 20 days in Class II, or 30 days in Class I toward his prison sentence for each 30 days he serves. Good Conduct Allowance credits also are used to calculate an inmate's discretionary and mandatory parole release dates.

Effective March 1, 1991, DOP 806–7.14(6) was amended to provide that an inmate who refused to provide a blood sample for DNA analysis should be charged with an institutional infraction under DOP 861. Upon conviction by the Adjustment Com-

1. *See,* Va.Code Ann. § 53.1–159.

mittee, he then would be provided a due process hearing by the Institutional Classification Committee (ICC). Under DOP 806, the inmate then would be reduced to GCA Class IV retroactive to the date of the infraction, and consequently, would earn no GCA credits until such time as he provided a blood sample. Amended DOP 806 also provides that an inmate entering the VDOC who refuses to provide a blood sample should be initially placed in GCA Class IV. Prior to the amendment, most incoming inmates were initially placed in Class II.

DOP 861 was amended effective April 1, 1992, to create new institutional infractions for refusal to provide a blood sample. A first conviction results in the loss of 90 days of GCA credits. A second conviction results in the loss of 180 days of GCA credits. Third and subsequent convictions result in the loss of all accumulated GCA credits. The loss of GCA credits are mandatory penalties that must be imposed upon conviction. The Adjustment Committee retains the discretion to impose isolation time of up to 15 days in addition to the loss of good time. The revoked credits may be restored once the inmate provides the requested blood sample. Prior to the amendment of DOP 861, an inmate who refused to provide a blood sample was charged with disobeying a direct order, and after an Adjustment Committee hearing, punished at the Committee's discretion according to the schedule of penalties available for that charge. The most serious punishment available for that offense was loss of 30 days GCA credit and/or placement in isolation for 15 days.

Plaintiffs are all felons who were convicted and entered the VDOC from 1986 to 1989, prior to the amendment of DOP's 806 and 861.[2] None of them have provided or been requested to provide a blood sample, and all state that they intend to refuse to do so. They contend that the amended regulations violate their liberty interests

under the Fourteenth Amendment by retroactively changing the terms of their entitlement to GCA credit. They further contend that the retroactive application of the amended regulations to them violates the *Ex Post Facto* Clause because the denial of GCA credits serves to lengthen the amount of time they spend behind bars.

This matter is before the court on plaintiffs' motion for summary judgment and defendants' cross-motion for summary judgment. Upon motion for summary judgment, the court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355 (4th Cir.1985). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

Plaintiffs' first claim is that the enhanced punishment provided for by amended DOP's 806 and 861 violates their liberty interests under the Fourteenth Amendment. They argue that the language of the DOP's and the statutes on which they are based created for them a vested liberty interest in the GCA program as it existed when they were incarcerated. They contend that because of this vested liberty interest, the defendants cannot now change institutional rules and regulations and apply those changes to the plaintiffs.

■ Lawfully incarcerated persons retain only a narrow range of protected liberty interests, while prison administrators have broad discretion in the management of correctional institutions. *Hewitt v. Helms*, 459 U.S. 460, 467, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). The due process clause does not create for a prison inmate a liberty interest in earning a certain number of good time credits. *Id.* at 466–68, 103 S.Ct. at 868–69. Consequently,

---

2. Plaintiffs also were convicted and incarcerated prior to the enactment of the DNA legislation, Va.Code Ann. §§ 19.2–310.2 through 310.7 (1990). They, however, do not dispute its constitutionality under due process and *ex post facto* grounds as applied to them. They agree that

they can be required to provide a blood sample and that they can be disciplined for failure to do so. They assert, however, that they can only be punished according to the regulations in effect when they entered the corrections system.

the court must look to state law or regulation to determine if a protected liberty interest has been created. State laws and regulations create a liberty interest only by "repeated use of explicitly mandatory language in connection with requiring specific substantive predicates...." *Id.* at 472, 103 S.Ct. at 871. The law or regulation must require that the administration use certain procedures and must place specified substantive limits on the administrator's discretion. *Id.*

Virginia Code §§ 53.1–198 through 202 (1981) created the GCA system. Section 53.1–199 states only that inmates "may be entitled to good conduct allowance...." DOP 806–4.0, however, states "that each inmate shall be given the opportunity to earn Good Conduct Allowance (GCA) based on his individual adjustment and performance in accordance with this procedure." Virginia Code § 53.1–201 states that "[g]ood conduct allowances shall be based upon a four-level classification system", but provides that "[p]ersons may be reclassified for an increase or decrease in class according to rules and regulations established pursuant to § 53.1–200." These regulations create for inmates a liberty interest only in the opportunity to earn GCA credits within a four-level classification system.

■ Neither DOP 806 nor the Va.Code creates a liberty interest in being placed in any particular GCA class or in earning any particular number of credits. Virginia Code § 53.1–200 states:

> Rules and regulations approved by the Board shall govern the earning of good conduct allowance. The amount of good conduct allowance to be credited to those persons eligible therefor shall be based upon compliance with written prison rules or regulations; a demonstration of responsibility in the performance of assignments; and a demonstration of a desire for self-improvement.

Prison officials are constrained to award GCA credits based upon the three areas of performance cited in the statute. However, DOP 806, the regulation approved by the Board, has always given prison officials broad discretion to determine whether an inmate's conduct and adjustment warrant placement in a particular GCA class. In amending DOP 806 to require placement of an inmate who refuses a DNA blood test in GCA Class IV, the defendants have merely exercised that discretion.

Even if state law creates a liberty interest, violations of due process are to be measured against a federal standard of what process is due. *Riccio v. County of Fairfax, Va.*, 907 F.2d 1459, 1469 (4th Cir. 1990). Federal due process requires only that the prison administration engage in an informal, nonadversarial review, including the inmate's statement, within a reasonable time after the fact. *Hewitt*, 459 U.S. at 472, 103 S.Ct. at 871. This informal procedure requires only notice to the inmate and an opportunity for the inmate to present his views, either orally or in writing. *Id.* at 476, 103 S.Ct. at 873. DOP 806 provides for a hearing in the Institutional Classification Committee before an inmate's GCA class is reduced. The inmate thus is provided the opportunity to justify his refusal to give a blood sample and to explain why the adverse action should not be taken against him. This is all that due process requires.

■ Amended DOP 861 creates the new institutional infraction of refusal to provide a blood sample and provides for forfeiture of previously earned GCA credits upon conviction. The Supreme Court has mandated procedural safeguards when the loss of statutory good time credits is at issue, specifically, 1) advance written notice of charges; 2) written findings; and 3) the right to call witnesses. *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Even if an inmate has a liberty interest in previously earned GCA credits, the Constitution does not prohibit the state from depriving the inmate of that liberty interest; it simply mandates procedural due process prior to the deprivation. DOP 861 provides for these due process protections whenever an inmate is charged with refusal to provide a blood sample.

Plaintiffs' second claim is that the retroactive application of the changes in DOP's 806 and 861 violates the *Ex Post Facto*

Clause. Plaintiffs assert that application of amended DOP's 806 and 861 to them violates the *Ex Post Facto* Clause because the inmates could not have anticipated the enhanced punishment when they committed their crimes, were convicted, and incarcerated. They complain that because the loss of GCA credits serves to lengthen the time they must spend behind bars, the amended regulations make their original sentence more burdensome.

■ The *Ex Post Facto* Clause provides simply that "No state shall ... pass any ... *ex post facto* Law." U.S. Const. Art. I, § 10, cl. 1. The prohibition applies only to "penal statutes which disadvantage the offender affected by them." *Collins v. Youngblood,* 497 U.S. 37, 41, 110 S.Ct. 2715, 2718, 111 L.Ed.2d 30 (1990). The legislature may not make a previously committed act criminal or increase the punishment for a crime after it was committed.[3] *Id.* at 43, 110 S.Ct. at 2719.

■ The United States Court of Appeals for the Fourth Circuit decided in *Jones v. Murray* that the statute establishing the DNA testing requirement itself was not penal, and therefore, did not violate the *Ex Post Facto* Clause. 962 F.2d at 309. The Court stated that "the blood testing requirement legally can be implemented, and as is the case regarding any valid prison regulation, violators can be administratively punished for their failure to provide samples." *Id.* Relying on *Gaston v. Taylor,* 946 F.2d 340, 343 (4th Cir.1991) (en banc), the Court explained that "[t]he *Ex Post Facto* Clause does not prevent prison administrators from adopting and enforcing reasonable regulations that are consistent with good prison administration, safety and efficiency." *Jones v. Murray,* 962 F.2d at 309. Reasonable prison regulations and punishment for infractions of those regula-

tions do not constitute additional punishment and therefore are not *ex post facto* because they are contemplated as part of every prisoner's original sentence. *Id.* A prisoner's original sentence does not embrace a right to one set of regulations over another; therefore, reasonable amendments to those regulations are anticipated as part of every prisoner's original sentence as well. *Id.*

■ The Fourth Circuit in *Jones v. Murray* held that enforcement of the DNA statute did violate the *Ex Post Facto* Clause to the extent that inmates were held into their mandatory parole period. The mandatory parole period referred to in *Jones* is that guaranteed by Va.Code Ann. § 53.1–159, as follows:

> Every person who is sentenced and committed under the laws of the Commonwealth to the Department of Corrections ... shall be released on parole by the Virginia Parole Board six months prior to his date of final discharge.[4]

This mandatory parole period, however, is not the same as the mandatory parole release date. The mandatory parole period will always begin six months prior to the end of the inmate's full sentence. For example, for a ten year sentence, the mandatory parole period will begin at nine and a half years. The mandatory parole release date, on the other hand, is calculated by taking the full sentence, subtracting the six month period, and then subtracting earned GCA credits.[5] An inmate has a state-created statutory right to be released six months prior to the end of his full sentence, as recognized in *Jones.* An inmate has no constitutional right, however, to be released on either discretionary or mandatory parole before that date. *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979); *Gaston v. Taylor,* 946 F.2d at 344. Al-

---

**3.** The Supreme Court in *Collins* rejected an earlier, broader definition that an *ex post facto* law was one that "in relation to the offence or its consequences, alters the situation of a party to his disadvantage." 497 U.S. at 43, 110 S.Ct. at 2719.

**4.** The statute makes exception only if the Board has "reasonable cause to believe that the release

poses a clear and present danger to the life or physical safety of any person...."

**5.** *See,* "It's About Time (A Booklet on Basic Time Computation)", Commonwealth of Virginia Department of Corrections (February 24, 1986).

though the loss of the ability to earn GCA credits and the loss of previously earned GCA credits do adversely affect an inmate's discretionary and mandatory parole release dates, neither affects the mandatory parole period. Even if an inmate earns no GCA credits at all, he will still be released six months prior to the end of his full sentence, unless the Parole Board finds that his release poses a clear and present danger. Accordingly, this court finds no *ex post facto* violation in amended DOP's 806 or 861.

For the reasons stated, this court denies the plaintiffs' motion for summary judgment and grants the defendants' cross-motion for summary judgment. In light of the court's decision on the merits, the plaintiffs' motion to certify a class is denied. An appropriate judgment and order will be entered this day.

The plaintiffs are advised that they may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of the Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5) or 4(a)(6).