Grayling A. BROWN–EL, Petitioner,

v.

**VIRGINIA PAROLE BOARD,
et al., Respondents.**

**Civil Action No. 96–648–AM.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Nov. 26, 1996.

Grayling A. Brown–El, Dillwyn, VA, for Plaintiff or Petitioner.

James S. Gilmore, III, Attorney General, Wirt P. Marks, IV, Assistant Attorney General, Richmond, VA, for Defendant or Respondent.

## MEMORANDUM OPINION.

ELLIS, District Judge.

Petitioner, a Virginia inmate, filed this habeas corpus petition under 28 U.S.C. § 2254, alleging that the Virginia Parole Board ("VPB") unconstitutionally deprived him of his statutory good time credits. Respondents[1] filed a Motion to Dismiss. Petitioner was given notice of an opportunity to respond pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975). He availed himself of this opportunity, submitting both a response to respondents' dismissal motion and a Motion for Summary Judgment. This matter is now ripe for disposition. For the reasons that follow, petitioner's motion must be denied, respondents' motion must be granted, and accordingly, the petition must be dismissed.

## I

Petitioner was convicted of aggravated sexual assault and sentenced to eight (8) years imprisonment. While incarcerated, petitioner earned three (3) years, five (5) months, and fourteen (14) days of good time credit pursuant to Virginia's Good Conduct Allowance statute ("GCA"). Va.Code § 53.1–199. On April 24, 1995, the VPB released petitioner on mandatory parole. Five months later, on September 27, 1995, the VPB revoked petitioner's parole because he had violated the conditions of his parole. As a result of the parole violation, the VPB ordered petitioner to serve three (3) years, five (5) months, and fourteen (14) days, the unserved portion of his sentence from his conviction for aggravated sexual assault. On these facts, petitioner alleges the following claims:

1. A violation of petitioner's due process rights on the ground that respondents

1. Petitioner named the Virginia Parole Board and the Director of the Virginia Department of Corrections. However, plaintiff is in custody at the Richmond City Jail and therefore, the Sheriff of the Richmond City Jail should be the sole respondent.

did not notify petitioner at the time of his parole release that his good time credits could be revoked for a violation of a parole condition;

2. A violation of petitioner's equal protection rights on the ground that respondents revoked petitioner's good time credits pursuant to a new policy that came into effect on May 11, 1995;

3. A violation of petitioner's right against double jeopardy on the ground that respondents punished petitioner twice for the same parole violation by revoking his parole and by revoking his good time credits.

## II

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of the law." U.S. Const. amend. XIV. A two part inquiry controls due process claims: (1) Does petitioner have a protected liberty interest within the meaning of the Fourteenth Amendment? and (2) If petitioner has a protected liberty interest, what procedural process is he due? *See Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972) (citing *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Joint Anti–Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951)); *Riccio v.*

*County of Fairfax*, 907 F.2d 1459 (4th Cir. 1990); *Bolden v. Murray*, 841 F.Supp. 742 (E.D.Va.1994); *Ewell v. Murray*, 813 F.Supp. 1180 (W.D.Va.1993).

The first inquiry focuses on the nature of the interest petitioner is claiming, namely good time credits earned while incarcerated. It is settled that the Constitution itself does not create a protected liberty interest for prisoners in earning good time credits. *Wolff*, 418 U.S. at 556, 94 S.Ct. at 2974–75; *Hewitt*, 459 U.S. at 467, 103 S.Ct. at 869. Yet, state laws, as well as the constitution, can create protected liberty interests under the Fourteenth Amendment. *Hewitt*, 459 U.S. at 469, 103 S.Ct. at 870 (citing *Meachum v. Fano*, 427 U.S. 215, 223–27, 96 S.Ct. 2532, 2537–40, 49 L.Ed.2d 451 (1976)). In this respect, state laws create a liberty interest when the statute contains "the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates." *Hewitt*, 459 U.S. at 472, 103 S.Ct. at 871–72. Because Virginia Code §§ 53.1–199 and 53.1–201, which govern good time credits, are framed in mandatory language,[2] it follows that petitioner, who was serving a sentence subject to this statute, had a liberty interest in the opportunity to earn good time credits while incarcerated. *See Ewell*, 813 F.Supp. at 1182.[3]

Yet, this conclusion neither ends nor advances the analysis. Nor is it necessary to proceed to the second inquiry concerning the nature of the process provided because the facts make clear that petitioner was never denied his good time credits, but instead received their full benefit through his early release.[4] Put another way, petitioner "used

---

2. The Virginia Code § 53.1–199 states that:

[G]ood conduct allowances shall be applied to reduce the [prisoner's] maximum term of confinement while he is confined in any state correctional facility [and] [o]ne-half of the credit allowed under the provisions of § 53.1–201 shall be applied to reduce the period of time a person shall serve before being eligible for parole.

The Virginia Code § 53.1–201 states that:
Good conduct allowances shall be based upon a four-level classification system ... Persons may be reclassified for an increase or decrease in class according to rules and regulations established pursuant to § 53.1–200.

3. As Virginia Code § 53.1–201 reflects, the rate at which inmates earn good time credits is a function of which classification level they are assigned to by the VDOC. *Ewell* narrowly held that a prisoner does not have a protected liberty interest in being placed in a particular classification level, nor in earning a certain number of good time credits. Rather, a prisoner has a protected liberty interest only in the opportunity to earn good time credits within the VDOC's classification system. 813 F.Supp. at 1182.

4. Petitioner does not dispute the amount of good time credits he earned while incarcerated nor the application of his good time credits to his early release on mandatory parole.

up" his good time credits to win early release on parole. *See Booth v. United States of America,* 996 F.2d 1171 (11th Cir.1993). Later, when petitioner violated his parole, the VPB, pursuant to Virginia Code § 53.1–165, exercised its discretion to revoke petitioner's parole and order him incarcerated for the unserved portion of the original term of imprisonment.[5]

In sum, petitioner was never deprived of his good time credits by the VPB. To the contrary, he received all the good time credits he was entitled to pursuant to Virginia Code § 53.1–199 and these credits were then fully "used up" to allow petitioner's early release. Petitioner's good time credits no longer existed at the time of his early release on parole because they had been "used up," much like the money used to purchase a theater ticket is "used up." To continue this analogy, when petitioner had violated his parole and, as a consequence, was incarcerated by the VPB, it is much like the ticket purchaser being ejected from the theater for misbehavior. The ticket purchaser spent or "used up" his money to gain entry into the theater. His ejection from the theater for misbehavior in no way deprived him of the money he paid for the ticket. That money, like petitioner's good time credits, had already been spent to buy the right to enter the theater or in petitioner's case, the right to early release from prison. Accordingly, petitioner's due process claim fails.

### III

■ Petitioner also alleges that respondents violated his equal protection rights by revoking his good time credits pursuant to a new policy that came into effect on May 11, 1995. As a consequence, petitioner claims respondents treated him differently then parolees who had their parole revoked prior to the new policy. An equal protection claim arises when, without adequate justification, similarly situated persons are treated differently by a governmental entity. *Washington*

*v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). To establish such a claim, petitioner must show that the VPB treated him differently from other similarly situated inmates and that a "discriminatory purpose was a motivating factor in the [VPB's] actions." *Shaheed v. Winston,* 885 F.Supp. 861, 868 (E.D.Va.1995) (citing *Washington,* 426 U.S. at 229, 96 S.Ct. at 2042–43).

In the instant case, respondents stated that the "VPB made a policy decision on May 11, 1995, to apply Va.Code §§ 53.1–159 and 53.1–165 in a manner consistent with the Virginia Attorney General's 1986 opinion." [6] The effect of the new policy on parole violators was that the VPB would now incarcerate all violators and require them to serve the remainder of their sentence. Under the former policy, the VPB exercised its statutory discretion with the result that some violators were incarcerated while others were not. On these facts, the VPB did not treat petitioner differently from other parolees who violated the conditions of their parole prior to May 11, 1995.

Nor does petitioner allege any facts that suggest he was similarly situated to any of the parolees who violated conditions of their parole prior to May 11, 1995. The VPB has the discretion to revoke parole for violations of the conditions of parole. Conditions of parole are determined on an individual basis and vary significantly from one parolee to another. Given these different conditions and the myriad of factors involved in deciding parole revocation, "[i]t is difficult to believe that any two prisoners could ever be considered 'similarly situated' for the purpose of judicial review of an equal protection claim." *Reffitt v. Nixon,* 917 F.Supp. 409, 414 (E.D.Va.1996) (citing *Rowe v. Cuyler,* 534 F.Supp. 297, 301 (E.D.Pa.1982)). Finally, petitioner alleges no facts to suggest that the VPB or any other respondent was motivated by a discriminatory purpose in promulgating

---

5. The congruence of the good time credits and the incarceration term is merely the result of legislative choice. The General Assembly of Virginia could have specified, within constitutional limits, an incarceration term different from the unserved portion of the original sentence.

6. The Virginia Attorney General's 1986 opinion stated that "Section 53.1–165 makes it clear that a parole violator may be required, in the discretion of the Parole Board, to serve the balance of the term of imprisonment to which the court or the jury originally sentenced him."

the 1995 policy. Accordingly, petitioner's equal protection claim fails.

## IV

Lastly, petitioner claims that his constitutional right against double jeopardy was violated when the VPB revoked both his good time credits and parole as punishment for his parole violation. It is settled that parole revocation is not an "essentially criminal" proceeding and therefore, is not protected by the double jeopardy clause. *Breed v. Jones,* 421 U.S. 519, 528–29, 95 S.Ct. 1779, 1785–86, 44 L.Ed.2d 346 (1975) (citing *Helvering v. Mitchell,* 303 U.S. 391, 398–99, 58 S.Ct. 630, 632–33, 82 L.Ed. 917 (1938)). Furthermore, this claim fails as this is plainly not a case where there is double punishment for a single offense. *Breed,* 421 U.S. at 519, 95 S.Ct. at 1780–81. The offense was violation of parole and the punishment was incarceration for a period of time equal to the unserved portion of petitioner's sentence. As previously shown, petitioner's good time credits were not revoked; they were "used up" or consumed. Accordingly, petitioner's double jeopardy claim fails.

## V

Based on the foregoing, the Court grants respondents' Motion to Dismiss and dismisses all respondents from this action. An appropriate Order shall issue.