**Zeb GASTON, Plaintiff–Appellant,**

**v.**

**John B. TAYLOR, Warden; Samuel Pruett, Assistant Warden; Toni V. Bair, Regional Administrator, Defendants–Appellees.**

No. 89–7546.

United States Court of Appeals,
Fourth Circuit.

Argued March 9, 1990.

Decided Nov. 5, 1990.

As Amended Nov. 13, 1990.

Patrick Mocha, Student Atty., argued (Richard J. Wilson, on brief), The American University Washington College of Law Practicing Law Center, Washington, D.C., for plaintiff-appellant.

William W. Muse, Asst. Atty. Gen., argued (Mary Sue Terry, Atty. Gen., on brief), Public Safety & Economic Development Div., Office of Atty. Gen., Richmond, Va., for defendants-appellees.

Before MURNAGHAN, Circuit Judge, BUTZNER, Senior Circuit Judge, and KAUFMAN, Senior District Judge for the District of Maryland, sitting by designation.

FRANK A. KAUFMAN, Senior District Judge:

On January 15, 1988, Zeb Gaston, an inmate at the James River Correctional Center in Virginia, the plaintiff herein, obtained a pair of jeans from the prison laundry to wear during visiting hours over the weekend. The laundry personnel, also inmates at the facility, gave him a pair which had been altered to contain a concealed zippered closure in the crotch beneath the buttoned closure. Plaintiff states that he did not become aware of the zippered clo-

sure until he was talking with a visitor on January 17.[1] During a search after the visit, prison officials discovered that his jeans contained an extra zippered closure. He was charged with violating Rule 224 of the Code of Inmate Offenses, which prohibits possession of contraband. The Rule defines contraband "as anything not specifically approved for the specific inmate who has possession of the item." The prison Adjustment Committee found Gaston guilty after a hearing on January 26 and sentenced him to 15 days of isolation, which were suspended pending 90 days of probation. The Committee based its ruling upon its finding that Gaston knew of the concealed zipper and did not report the alteration.

Gaston appealed to the Warden, John Taylor, who affirmed the conviction. The conviction was again upheld on a further appeal to the Regional Administrator, Toni Bair. Gaston filed this suit under 42 U.S.C. § 1983 against three Virginia prison officials—Regional Administrator Toni Bair, Warden John Taylor, and Assistant Warden Samuel Pruett—alleging that the defendants violated his constitutional rights by convicting him of violating a prison regulation without adequate notice that his conduct would constitute a violation. In so doing, Gaston contends that he had no reasonable notice that wearing state-issued jeans with a zippered closure was tantamount to possession of contraband. After defendants moved for summary judgment under Rule 56 of the Fed.R.Civ.P., plaintiff, in response, submitted an affidavit averring that he had known of no rule or regulation requiring him to turn in jeans with a zipper in the crotch area and that he had seen numerous other inmates in the past wearing similarly altered jeans. Some of those inmates, he states, were discovered with the altered jeans and were not charged with any violations. He argues that, in this context, the prohibition against "contraband" was too vague to provide him with adequate notice that his conduct was prohibited. He has also asserted in that

same affidavit that the conviction, despite the suspended sentence, may adversely affect decisions regarding his work release, furloughs, and parole.

The district court granted summary judgment in favor of the defendants on the grounds that Gaston received a constitutionally adequate disciplinary hearing, that the defendants could not be held liable under a theory of *respondeat superior*, and that the defendants, by merely reviewing the decision, did not personally participate in the decision to charge and convict Gaston. The district court, in so doing, determined that there was an undisputed basis in fact for the action taken against Gaston. We agree that Gaston has failed to show sufficient personal involvement by defendant Pruett to survive the latter's motion for summary judgment. However, because we find that material issues of fact exist as to whether Gaston had adequate notice of the standard of conduct to which he was supposed to conform and also as to whether defendants Taylor and/or Bair were personally involved, we reverse and remand for further proceedings with regard to the claims against those two defendants.

## I.

In order to state a claim for a constitutional violation of the Fourteenth Amendment of the type asserted herein, plaintiff must show that he suffered a deprivation of life, liberty or property and that the deprivation was effected without due process. *Zinermon v. Burch*, —— U.S. ——, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990) ("In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law.*"). (Emphasis in original; citations omitted.)

Even though plaintiff enjoyed a lesser liberty interest while in prison, "[a]n in-

---

1. While there is evidence in the record that Gaston knew about the extra zippered closure prior to visitation hours, we construe the evidence in favor of the plaintiff in light of the current summary judgment context of this case.

mate is entitled to prior notice, or 'fair warning,' of proscribed conduct before a *severe* sanction may be imposed." *Gibbs v. King*, 779 F.2d 1040, 1044 (5th Cir.1986) (emphasis added) (citations and footnote omitted). Because his 15–day sentence was suspended, Gaston did not suffer any actual deprivation of his liberty from the charge. As a result, it is not immediately clear that his sentence was "severe" enough to invoke a constitutional notice requirement.

While the sanction has had little impact on Gaston so far, he contends that it may adversely affect future discretionary decisions concerning his liberty, such as for work release, furloughs and parole. For example, the Virginia Code requires the Director to consider the prisoner's "institutional adjustment and such other factors as may be appropriate" in parole recommendations. Va.Code § 53.1–154.1. The Virginia Code and the Parole Board Policy Manual both indicate that the prisoner's history plays a role in the parole decision. Even if such effect on Gaston's liberty interest is slight, it would not be fair to allow a conviction for a prison regulation violation to remain on his record if he had inadequate notice of the prohibition. "A fundamental tenet of due process is that to be sanctioned one must have received fair notice that one's allegedly violative conduct was prohibited." *Coffman v. Trickey*, 884 F.2d 1057, 1060 (8th Cir.1989) (citations omitted). A regulation which carries a moderate penalty probably requires less clear and less specific notice than one with a more substantial penalty, but the potential effect upon plaintiff's liberty in this case is sufficient to entitle him to at least minimal notice that his conduct was prohibited. *See Meyers v. Alldredge*, 492 F.2d 296, 310–11 (3d Cir.1974) (adopting a balancing approach to the application of the vagueness doctrine to prison regulations); *Landman v. Royster*, 333 F.Supp. 621, 655–56 (E.D. Va.1971) (suggesting that "the greater the individual loss, the higher the requirements of due process").

## II.

The district court correctly determined that the proceedings before the Adjustment Committee gave Gaston notice of the charge and an opportunity to respond and that the prison had a basis in fact for its actions. The issue in this appeal, however, is not the adequacy of the process Gaston received after the alleged commission of a prohibited act, but rather the adequacy of the notice that the act in question was prohibited.

Gaston was convicted of possession of contraband, defined as "anything not specifically approved for the specific inmate who has possession of the item." The jeans Gaston wore contained an extra closure in the crotch area which, according to defendants, could be used to smuggle items into the prison, to engage in conjugal activities, or to engage in illicit sexual activity with other inmates. The defendants assert that such alteration of the crotch area was not approved and rendered the jeans contraband. In addition, the extra closure was a zipper, and defendants assert that only button closures are allowed. In that context, the issue presented to this court is whether the regulation was specific enough to provide plaintiff with adequate notice that the jeans as altered constituted contraband and that he had a duty to turn the jeans in to prison officials when he noticed the alteration.

While the need in the prison context to maintain security and discipline weighs against an overly strict application of the vagueness doctrine, courts have nonetheless required some minimum degree of specificity in prison regulations. *See Vodicka v. Phelps*, 624 F.2d 569 (5th Cir.1980) (analyzing the vagueness of a prison regulation, both facially and as applied, in the context of an alleged First Amendment violation). In a careful opinion which canvasses the arguments for and against the application of the vagueness doctrine to prison rules, Judge Merhige, writing for the United States District Court for the Eastern District of Virginia, concluded: "The objections to the application of some vagueness principle may all be met simply by relaxing the standard somewhat in deference to the state's legitimate needs, rather than by

abandoning it. The Court concludes, therefore, that the existence of some reasonably definite rule is a prerequisite to prison discipline of any substantial sort." *Landman*, 333 F.Supp. at 656. *See also Meyers v. Alldredge*, 492 F.2d at 310–11 (relying upon the *Landman* approach to the vagueness doctrine in the prison context). We turn now to the regulation at issue in this case to determine whether it is specific enough, both facially and as applied, to provide adequate notice to inmates of the required standard of conduct.

We cannot say that the regulation is impermissibly vague on its face. Prison officials have a legitimate need to control the possessions of inmates, and it is not possible to list explicitly all items which are allowable. Switching the burden to require inmates only to possess approved items is a reasonable confinement procedure, provided that the inmates are given reasonably clear instruction as to what constitutes an approved item so that the regulation, as applied, is not impermissibly vague.

The parties do not dispute that plaintiff received the altered jeans from an inmate in the prison laundry room authorized to dispense prison clothing. Plaintiff contends that he could reasonably have relied on the prison laundry to issue clothing that, if not sanctioned, then at least was not prohibited by prison officials. Also, plaintiff has indicated in his affidavit that other prisoners wore altered clothing without reprimand and also that he had never seen a rule or regulation imposing a duty to turn in clothes issued by the prison laundry.

In response, defendants argue that even if the definition of contraband is vague, a pair of pants with an opening in the crotch carries some indicia of wrongdoing within the context of a prison. Also, defendants assert that some of plaintiff's statements suggest that he may have realized that the jeans were prohibited. For example, at one point plaintiff indicated that he noticed the zipper while he was with his visitor, but did not report it at that time because he thought that it would end the visit. Defendants also point out that the person issuing

the jeans was another prisoner, not a prison official. Those arguments weigh in defendants' favor, but they do not eliminate the need to weigh competing evidence. Rather, a factual inquiry into what plaintiff reasonably understood was banned is required. Plaintiff has "set forth specific facts showing that there is a genuine issue for trial," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986), of whether he had sufficient notice of the violation. Accordingly, for that reason we must vacate the grant of summary judgment in favor of defendants Taylor and Bair. On remand, the district court should determine whether an inmate of reasonable intelligence would have realized that the altered jeans issued to plaintiff were contraband and that a duty existed to turn the jeans in to prison officials. If, in that context, the plaintiff prevails, the relief to which plaintiff would seemingly be primarily entitled is the correction of his prison record in order that the disciplinary action for possession of contraband would not be an impediment to work release, furlough, or parole.

III.

The district court also granted summary judgment in favor of defendants on the alternative ground that none of them was directly involved in the decision to charge and convict Gaston and so cannot be held liable under § 1983. In *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that liability under § 1983 could not be solely premised on the doctrine of *respondeat superior*. Nevertheless, the defendant supervisors may be liable if plaintiff can show "a causal connection linking the supervisor's actions with the violation." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir.1988) (citation omitted); *Slakan v. Porter*, 737 F.2d 368, 376 (4th Cir.1984), *cert. denied*, 470 U.S. 1035, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985) (imposing liability upon supervisors where violation was a "natural and foreseeable consequence of the supervisors' indifference").

Under the prison guidelines and regulations, the Warden had a duty to review Gaston's conviction to ensure that the decision rendered by the Adjustment Committee was appropriate. Division Guideline 861. The Regional Administrator has the same duty to review and reverse the decision on appeal. Thus, defendants Taylor and Bair had a personal obligation to review the conviction and to protect the plaintiff's entitlement to due process. Plaintiff has, in the present summary judgment context of this case, adequately stated why he did not realize the jeans given to him by the laundry constituted contraband. If plaintiff was reasonable in not recognizing his conduct as prohibited, a matter to be determined on remand, then if there was indifference on the part of the supervisors in reviewing his conviction, such indifference could support a claim under § 1983.[2] As this circuit explained in *Slakan*, 737 F.2d at 373, "the outer limits of [supervisor] liability in any given case are determined ultimately by pinpointing the persons in the decision making chain whose deliberate indifference permitted the constitutional abuses to continue unchecked." Moreover, "[t]he final determination 'generally is one of fact, not law.'" *Id.* (quoting *Avery v. County of Burke*, 660 F.2d 111, 114 (4th Cir.1981)).[3] We therefore reverse the district court's alternative basis for granting summary judgment in favor of defendants Taylor and Bair. With regard to defendant Pruett, however, plaintiff has not alleged any personal involvement; accordingly, the district court correctly granted summary judgment as to that defendant. As to the defendants Taylor and Bair, for the reasons previously stated in this opinion, we remand to the

district court for further proceedings in accordance with this opinion.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

---

**2.** On remand, the district court should consider exactly what level of indifference, if any, the defendant supervisors showed. In the context of a procedural due process claim, to which this claim is closely akin, a negligent oversight may not in and of itself render a defendant liable under § 1983. *See Daniels v. Williams,* 474 U.S. 327, 328, 334 n. 3, 106 S.Ct. 662, 663, 666 n. 3, 88 L.Ed.2d 662 (1986) (holding that negligence, in the context of a tort claim relating to bodily injuries allegedly sustained by an inmate because of lack of maintenance of a prison stairway, does not constitute a violation of constitutional due process, but reserving the question of

whether "recklessness" or "gross negligence" is sufficient to trigger the protections of constitutional due process).

**3.** The district court did not reach the issue of whether defendants can meritoriously assert against plaintiff's claims for damages the defense of qualified immunity under the "clearly established" rights standard of *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Accordingly, we express no views at this time as to that issue.