**Zeb GASTON, Plaintiff–Appellant,**

v.

**John B. TAYLOR, Warden, Samuel Pruett, Assistant Warden, Toni V. Bair, Regional Administrator, Defendants–Appellees.**

No. 89–7546.

United States Court of Appeals, Fourth Circuit.

Argued April 9, 1991.

Decided Oct. 8, 1991.

Radhika Karmarkar, Third–Year Law Student, Washington College of Law Practicing Law Center, The American University, Washington, D.C., argued (Richard J. Wilson, Patrick Mocha, Third–Year Law Student, Washington College of Law Practicing Law Center, The American University, on brief), for plaintiff-appellant.

Mark R. Davis, Asst. Atty. Gen., Richmond, Va., argued (Mary Sue Terry, Atty. Gen. of Virginia, William W. Muse, Asst. Atty. Gen., Public Safety & Economic Development Div., on brief), for defendants-appellees.

Before ERVIN, Chief Judge, RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE, WILKINSON, WILKINS and NIEMEYER, Circuit Judges, and BUTZNER, Senior Circuit Judge.

## OPINION

NIEMEYER, Circuit Judge:

When Zeb Gaston, an inmate at the James River Correctional Center in State Farm, Virginia, was discovered wearing pants with a concealed zipper in the crotch area (in addition to a normal buttoned closure), he was charged with violation of a prison regulation which prohibits possession of contraband. At a prison administrative hearing, he was found guilty and sentenced to "15–days isolation," which was suspended on the condition of 90 days good behavior. After exhausting institutional appeals, he filed suit against Virginia state prison officials under 42 U.S.C. § 1983 for unspecified injunctive relief and damages, contending that he was denied liberty without due process of law because he did not know either that concealed zippers were contraband or that his pants, which were issued by the prison laundry, had a concealed zipper. From a summary judgment entered by the district court in favor of the prison officials, Gaston appeals. For the reasons that follow we hold that Gaston was not deprived of a liberty interest, and therefore we affirm.

### I

In anticipation of a visit on Sunday, January 17, 1988, Gaston went to the prison laundry on the prior Friday and specifically requested "a good pair, but not a new pair" of pants to wear to the visiting room. Laundry personnel, who were also prison inmates, issued Gaston a pair of pants which contained a concealed zipper closure in addition to the normal buttoned closure. Gaston acknowledges that during the course of the visit two days later, he realized that the pants were equipped with a concealed zipper closure in the crotch area when he got his "personals" caught in it. The record does not disclose the precise

location of the zipper and why he would have become entangled in it if he did not know it existed. Nevertheless, he states that he made no attempt to report the altered pants to the guards, because he feared that his visit would have been cut short.

When a routine strip search following the visitation revealed the concealed zipper closure, Gaston was charged with possessing contraband in violation of Rule 224 of the Code of Inmate Offenses, which defines contraband as "anything not specifically approved for the specific inmate who has possession of the item." A violation of Rule 224 is designated a major, but not a serious offense. Following an administrative hearing, Gaston was found guilty and sentenced to 15 days of isolation, the sentence suspended on the condition that he remain on good behavior for 90 days. He never served any time in isolation, but he contends that the record of his conviction will adversely affect his eligibility for work release, furlough, and parole.

## II

Gaston contends that the punishment imposed was in violation of his due process rights because there was no regulation expressly prohibiting zippered pants and he received "no reasonable notice that wearing state-issued jeans with a zippered closure was tantamount to possession of contraband." He argues that principles of due process require that inmates not be punished for forbidden actions of which they had no prior notice and that rules and regulations be communicated to prisoners as to conduct which can subject them to serious discipline. He contends that whether or not he had knowledge is a disputed fact which should have precluded the entry of summary judgment by the district court.

Gaston concedes that the term contraband, and the definition provided by Rule 224, are sufficient to apprise any inmate of ordinary intelligence that possession of any unapproved property is forbidden. *See Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127–28, 70 L.Ed. 322 (1926). Clarifying his position more elaborately in his second brief (in answer to the defendants' petition for rehearing *en banc*) his counsel states:

> Mr. Gaston has never argued, as the panel suggests, that the definition of contraband is impermissibly vague on its face. The panel did, however, agree with Mr. Gaston's assertion that there are genuine issues of fact—issues of fact which have not been reached by any prior fact finder—as to whether the definition of contraband can be applied to him in this case.

> \* \* \* \* \* \*

> [W]hile the Adjustment Committee found that Mr. Gaston was "aware" that he had a zipper in the crotch of his jeans, and that he did not report this fact, there has never been a factual finding, by that body on any review, that Mr. Gaston knew that such conduct was proscribed under the tautological definition of "contraband."

When it is conceded that the rule on its face is not constitutionally vague, the question of whether Gaston was aware of the prison regulation prohibiting contraband and its definition as "anything not specifically approved" for his use in prison loses much of its relevance. If the regulation is not constitutionally infirm, ignorance of it is not the basis of a valid due process challenge. *Cf. Cheek v. United States*, —— U.S. ——, 111 S.Ct. 604, 609, 112 L.Ed.2d 617 (1991) (as a general rule, ignorance or mistake of law is no defense to a criminal prosecution).

That he maintains there is a material factual issue is, in any event, peculiar in view of his concession that when he discovered the concealed zipper closure during the visit, he did not report the fact to the guards *because he feared that his visit would be cut short.* A defense of ignorance would not have logically permitted this statement. He nevertheless argues that because the rule was not enforced against others who wore pants with concealed zippers, any doubt about his knowledge should create a question of fact.

We need not resolve the last doubt on this issue, because we conclude that the entire process did not result in any denial of a liberty interest and therefore no constitutional question was raised under the Fourteenth Amendment.

## III

Although the Fourteenth Amendment prohibits a state from depriving a defendant of liberty without due process of law, when the defendant is lawfully convicted and confined to prison, he loses a significant interest in his liberty for the period of his sentence. Embraced in his loss of liberty is his consignment to a prison regimen, managed by prison officials who by necessity are given broad discretion in the administration of his confinement. *See Hewitt v. Helms*, 459 U.S. 460, 467, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976). Any review, therefore, of prison discretion begins with a recognition that the liberty interest of a convicted defendant is substantially restricted and his confinement is properly subject to the management of prison officials, who for the order of the prison, the safety of prisoners, and the safety of themselves must have broad discretion in the management of the prison.

Nevertheless, it is readily apparent that confinement to prison does not strip a prisoner of all liberty interests. If a prisoner's term of imprisonment can be shortened or modified by rights conveyed to him under state law, those rights cannot be denied without due process. *See, e.g., Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) (state right to mandatory parole); *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (state right to good-time credits). Moreover, punishment or confinement beyond that contemplated by the original sentence imposed can be imposed only with procedures satisfying due process. *See Vitek v. Jones*, 445 U.S. 480, 493, 100 S.Ct. 1254, 1263–64, 63 L.Ed.2d 552 (1980) (involuntary transfer to a mental hospital). But changes in a prisoners' location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges—matters which every prisoner can anticipate are contemplated by his original sentence to prison—are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage the prisons safely and efficiently. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989); *Hewitt, supra; Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). Thus, a prisoner's liberty interests protected by the Fourteenth Amendment are those which were not taken away, expressly or by implication, in the original sentence to confinement.

The 15–day suspended sentence of "isolation" given to Gaston caused no change in the condition of his confinement, other than to impose a condition that he remain on good behavior for 90 days. Arguing that a suspended sentence of isolation and a sentence of solitary confinement are "analytically indistinguishable," Gaston contends that solitary confinement represents a major change in conditions in confinement, entitling him to due process because the confinement is a punishment, not an act of administrative segregation. *See Wolff,* 418 U.S. at 571–72 n. 19, 94 S.Ct. at 2982; *cf. Hewitt,* 459 U.S. at 468, 103 S.Ct. at 869–70. We need not, however, reach the question of whether a 15–day sentence to solitary confinement during a term of imprisonment would implicate a liberty interest because in this case Gaston received a *suspended* sentence of isolation, requiring him to serve no time in isolation and bringing about no change in the length or conditions of his original punishment. Contrary to his argument, the suspended sentence for the infraction falls well within the

scope of prison discipline anticipated by his original sentence. *See Hewitt,* 459 U.S. at 470, 103 S.Ct. at 870–71.

■ Gaston argues further that the record of conviction could adversely affect his eligibility for work release, furlough and parole. His argument, however, is unsupported by any examination of Virginia law to determine whether he is given an entitlement that was adversely affected. In the absence of some entitlement, a fear or hope about a future discretionary decision is too speculative to give him a liberty interest. "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz,* 442 U.S. at 7, 99 S.Ct. at 2103–04. A liberty interest protected by the Fourteenth Amendment must amount to more than an abstract need or desire, *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) or a unilateral hope, *Connecticut Bd. of Pardons v. Dumschat,* 452 U.S. 458, 465, 101 S.Ct. 2460, 2464–65, 69 L.Ed.2d 158 (1981). "Rather, an individual claiming a protected interest must have a legitimate claim of entitlement to it." *Kentucky Dep't of Corrections,* 490 U.S. at 460, 109 S.Ct. at 2464–65.

Under Virginia law, work release, furlough and parole are all characteristically discretionary programs in which Gaston could acquire no entitlement.

The Virginia work release statute provides that "[t]he Director [of the Department of Corrections] is authorized to establish work release programs, subject to such rules and regulations as the [State] Board [of Corrections] may prescribe...." Va. Code Ann. § 53.1–60(A). The statute goes on to give the director *discretion* to approve inmates for the program. If "the Director is satisfied [that an inmate] is trustworthy, [the inmate] *may* be approved for employment" or "other related community activity programs...." *Id.* (emphasis added).

Likewise, the furlough statute provides that "[t]he Director *may* extend the limits of confinement of any prisoner in any state correctional facility to permit him a furlough...." Va.Code Ann. § 53.1–37(A) (emphasis added). The period of furlough is "prescribed by the Director or his designee, in his *discretion....*" *Id.* (emphasis added). The granting of furloughs and their length are thus left to the discretion of the Director, subject only to guidelines established by the Board.

■ Finally, the Virginia parole statutes provide that the decision to release a prisoner on parole is (with the exception of mandatory parole under Va.Code Ann. § 53.1–159) a discretionary one which is dependent on subjective evaluations and predictions of future behavior. Initial eligibility for parole is prescribed by the number and character of a prisoner's felony convictions, sentences and commitments, and no mention is made of institutional misconduct as a factor. Va.Code Ann. § 53.1–151. Consideration for parole at times earlier than specified, however, is discretionary with the Director. Va.Code Ann. § 53.1–154.1. Although parole eligibility is prescribed thereby giving to a prisoner the right for parole consideration at a specified time, at whatever time a prisoner is considered for parole, his actual release is a discretionary decision determined by an investigation into numerous factors including his history, mental and physical condition, attitude, and compatibility with the "interests of society." Va.Code Ann. § 53.1–155. The Board's inquiry is a "prediction of the prisoner's prospects for a law-abiding life," and "[t]he factors, both objective and otherwise, that may inform this prediction are numerous." *Bloodgood v. Garraghty,* 783 F.2d 470, 473 (4th Cir. 1986). When release by parole depends on informed predictions such as are specified in the Virginia scheme, a prisoner cannot claim entitlement and therefore a liberty interest in the parole release. *See Greenholtz,* 442 U.S. at 10, 99 S.Ct. at 2105.

Mandatory parole, which is also granted by the statute, is applicable to every person "six months prior to his date of final discharge." Va.Code Ann. § 53.1–159. Gaston makes no contention, however, that

his right to mandatory parole has been affected by his institutional misconduct.

Because the 15–day suspended sentence of isolation deprived Gaston of no liberty interest protected by the Fourteenth Amendment, we affirm the judgment of the district court.

AFFIRMED.

BUTZNER, Senior Circuit Judge, with whom Circuit Judge MURNAGHAN and Circuit Judge SPROUSE join, dissenting:

I fully subscribe to the following principle of constitutional law: "A substantial liberty from legal restraint is at stake when the State makes decisions regarding parole or probation." *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 18, 99 S.Ct. 2100, 2109, 60 L.Ed.2d 668 (1979) (Powell, J., concurring in part and dissenting in part). Indeed, we have previously decided that Virginia prisoners have a liberty interest entitling them to the minimum requirements of procedural due process in parole release proceedings. *Franklin v. Shields,* 569 F.2d 784, 800 (4th Cir.1978) (en banc). Criteria adopted by the Virginia Parole Board guiding its parole decisions included "the prisoner's institutional experience." *Franklin,* 569 F.2d at 791–92 n. 29. On remand it should not be difficult to determine whether a prisoner's possession of contraband is a factor that the parole board would typically consider.

For reasons adequately stated in the panel opinion in *Gaston v. Taylor,* 918 F.2d 25 (4th Cir.1990), I would vacate the summary judgment granted by the district court and remand for further proceedings.