**Alvin E. ALLEY, James Fennell, James A. Godwin, Jr., Herman Gray, Jr., Richard Gray, William Hunter, Alvin Johnson, Essex Johnson, Gary Johnson, Kenneth R. Jones, John Lincoln, Terry Lockett, Michael A. McCoy, Thomas T. Newlin, Lucius Pegram, Clinton R. Powell, Lynwood W. Rawls, Jr., Dale E. Stutzman, Donnell Tillery, Anthony G. Wright, and Johnny Wynn, Jr., Plaintiffs,**

v.

**R. ANGELONE, VDOC Director, G.M. Johnson, VDOC Deputy Director, J.A. Smith, Jr., VDOC Regional Director, J. Jabe, GRCC Chief Warden, D.R. Lawson, GRCC Acting Chief Warden, G.L. Bass, GRCC Deputy Warden, and J.V. Beale, GRCC Assistant Warden, Defendants.**

**Civil Action No. 2:95cv228.**

United States District Court,
E.D. Virginia,
Norfolk Division.

April 10, 1997.

Alvin E. Alley, Jarratt, VA, pro se.

Jill T. Bowers, Assistant Attorney General, Correctional Litigation Section, Office of Attorney General, Criminal Law Division, Richmond, VA, for Defendants.

## OPINION AND FINAL ORDER

REBECCA BEACH SMITH, District Judge.

Plaintiffs, Virginia inmates, bring this *pro se* action pursuant to 18 U.S.C. § 1961, *et seq.*, 42 U.S.C. §§ 1983, 1985, and 1986 to

redress alleged violations of their constitutional rights. Plaintiffs claim that defendants have violated the Racketeer Influenced and Corrupt Organizations (RICO) Act and the Hobbs Anti–Racketeering Act and, as a result, violated plaintiffs' constitutional rights.

## I. Procedural History

Plaintiffs filed their Complaint and paid the statutory filing fee on March 6, 1995. By Order filed March 1 5, 1995, the Complaint was ordered filed. By Order filed October 20, 1995, plaintiffs John Lincoln and Michael A. McCoy were dismissed for failure to supply proof that they had exhausted their administrative remedies. By Order filed December 7, 1995, plaintiff Alvin Johnson was dismissed for failure to submit proof that he had exhausted his administrative remedies. By Order filed December 7, 1995, the court ordered defendants to respond to plaintiffs' Complaint within sixty (60) from the date thereof if they chose to return the Waiver of Service enclosed with that Order within thirty (30) days from the date thereof. On January 22, 1996, counsel for defendants, Jill Bowers, Assistant Attorney General, returned the Waiver of Service on behalf of defendants. Defendants timely filed an Answer on February 7, 1996.

By Order filed March 12, 1996, the court ordered that any dispositive motions be filed within thirty (30) days from the date thereof. On April 12, 1996, defendants, through counsel, filed a Motion for an Enlargement of Time in which to file their dispositive motion. By Order filed April 15, 1996, the court granted defendants' motion and directed defendants to file any dispositive motions within thirty (30) days from the date thereof.

On May 30, 1996, defendants, through counsel, filed another Motion for an Enlargement of Time. By Order filed May 31, the court granted defendants' Motion for an Enlargement of Time and directed defendants to file any dispositive motions by July 1, 1996. On July 1, 1996, defendants filed their motion to dismiss pursuant to Rule 12(b)(6).

In accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975), plaintiffs were given an opportunity to respond to defen-

dants' motion with any material that they wished to offer in rebuttal. By Order filed September 4, 1 996, the court directed plaintiffs to file any responsive pleadings within twenty (20) days from the date thereof. The court also instructed plaintiffs that failure to submit any materials could result in an adverse judgment based on defendants' motion. Plaintiffs failed to respond. By order filed October 17, 1996, the court denied plaintiff Powell's motion for the appointment of counsel. Plaintiffs still have not filed any response to defendants' Motion to Dismiss. Accordingly, this action is ready for judicial determination.

## II. Facts

Plaintiffs allege that the defendants have engaged in a conspiracy whereby they under staffed all Virginia Department of Corrections (VDOC) institutions and incited riots at Haynesville Correctional Center, Dillwyn Correctional Center, Greensville Correctional Center, and other VDOC institutions. Plaintiffs allege that defendants have conspired to implement a *de facto* policy of under staffing security supervisors, correctional officers, rehabilitative treatment and support personnel. In addition, the plaintiffs allege that defendants allowed dereliction of duty by employees of the VDOC. Plaintiffs allege that defendants conspired to incite riots at various institutions, including Greensville Correctional Center. Plaintiffs were housed at Greensville Correctional Center at the time the riot occurred. Plaintiffs contend that the defendants arranged to manipulate the media coverage of the riots to broadcast false and misleading reports in an apparent attempt to influence prominent state officials and citizens. Defendants instituted a lockdown in response to the riots and ceased operation of the manufacturing and shipment of goods produced by inmates. Plaintiffs allege that defendants instituted a screening criteria for removing prisoners from lockdown status, whereby some Greensville inmates were released from lockdown while others were not.

Plaintiffs complain that the lockdown status caused a three-month interruption in their prison employment resulting in loss of wages and good conduct allowances. Plain-

tiffs allege that the lockdown resulted in numerous violations of plaintiffs' constitutional rights including denial of recreation, commissary privileges, visitation, telephone access, access to the law library, mail, showers, rehabilitative programs, medical care, fresh air, personal hygiene products and cleaning products. In addition, plaintiffs allege that the minimum dietary requirements were not provided. Apparently, an unidentified plaintiff has suffered physical, mental and emotional harm.

### III. Analysis

In construing a motion to dismiss, the facts alleged in plaintiff's *pro se* complaint must be taken as true. *Loe v. Armistead,* 582 F.2d 1291, 1292 (4th Cir. 1978), *cert. denied,* 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980). A *pro se* complaint, no matter how unartfully pleaded, must survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines v. Kerner,* 404 U.S. 519, 521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (per curiam). A *pro se* complaint involving civil rights issues should be liberally construed. *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir.), *cert. denied,* 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978). Dismissal may be appropriate where the complaint contains a detailed description of underlying facts which fail to state a viable claim. *Estelle v. Gamble,* 429 U.S. 97, 106–09, 97 S.Ct. 285, 292–94, 50 L.Ed.2d 251 (1976). However, where the complaint is broad, dismissal for failure to state a claim is improper. *Bolding v. Holshouser,* 575 F.2d 461 (4th Cir.), *cert. denied,* 439 U.S. 837, 99 S.Ct. 121, 58 L.Ed.2d 133 (1978). Finally, where a *pro se* complaint contains a potentially cognizable claim, plaintiff should be allowed to particularize the claim. *Coleman v. Peyton,* 340 F.2d 603, 604 (4th Cir.1965).

### A. Claims Against Defendants in Their Official Capacity

■ To the extent that plaintiffs are suing defendants in their official capacities

for money damages in this Complaint, defendants are immune from suit under the doctrine of sovereign immunity, because state officials acting in their official capacities are not "persons" within the meaning of § 1983.[1] *Will v. Michigan Department of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). If, on the other hand, plaintiffs are suing defendants in their individual capacities, they must affirmatively show that defendants "acted personally in the deprivation of the plaintiffs' rights." *Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir.1977); *see also McDonald v. Dunning,* 760 F.Supp. 1156, 1160 (E.D.Va.1991). It is not enough to show that subordinates of a sued official deprived plaintiffs of their constitutional rights; the doctrine of *respondeat superior* has no application in section 1983 cases. *McDonald,* 760 F.Supp. at 1160; *see also Monell v. Department of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978); *Vinnedge,* 550 F.2d at 928. If plaintiffs have not alleged any personal connection between a defendant and a denial of their constitutional rights, that claim against that defendant must fail. *Vinnedge,* 550 F.2d at 928.

Accordingly, defendants' Motion to Dismiss plaintiffs' claims against them in their official capacities is **GRANTED.**

### B. Plaintiff's RICO Claim

■ Plaintiffs generally allege that defendants have violated RICO, 18 U.S.C. § 1962, and the Hobbs Anti–Racketeering Act, 18 U.S.C. § 1951 *et seq.* Plaintiffs attempt to raise a claim under RICO. However, plaintiffs do not attempt to raise a claim under the Hobbs Anti–Racketeering Act. They claim that the defendants' violations of these statutes resulted in the their loss of employment within the correctional system. Plaintiffs claim that defendants conspired to under staff security supervisors, correctional officers, rehabilitative treatment staff and support personnel. Plaintiffs appear to allege

---

1. State officials sued in their official capacity for injunctive relief are treated as "persons" under § 1983 because such actions are not treated as actions against the state. *Will,* 491 U.S. at 71 n. 10, 109 S.Ct. at 2312 n. 10.

that defendants incited the riots that occurred at various correctional facilities for the purpose of placing those facilities on lockdown status and, thus, to ultimately deprive plaintiffs of their employment for at least three months, decrease their earning of good conduct allowances, and decrease their chances for parole.

■ Civil remedies may be sought, pursuant to 18 U.S.C. § 1964(c), when a plaintiff has suffered an injury to his business or property as a result of a violation of section 1962.[2] A plaintiff must plead all elements of the alleged violation of section 1962 in order to state a claim under section 1964(c). *Sedima, S.P.R.L. v. Imrex, Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). In order to establish the element of conspiracy, a meeting of the minds must be established. *U.S. v. Bell,* 954 F.2d 232 (4th Cir. 1992). For purposes of establishing a conspiracy for recovery under section 1964, plaintiffs must allege with specificity two or more predicate acts of racketeering within the meaning of section 1962. *Laterza v. American Broadcasting Co., Inc.,* 581 F.Supp. 408, 413 (S.D.N.Y.1984). Conclusory allegations of conspiracy are insufficient to establish the existence of a cause of action under section 1964. *Productions & Leasing v. Hotel Conquistador, Inc.,* 573 F.Supp. 717, 724 (D.Nev.1982), *aff'd,* 709 F.2d 21 (9th Cir. 1983); *Ballinger v. North Carolina Agr. Extension Serv.,* 815 F.2d 1001 (4th Cir.1987) (conclusory allegations insufficient to state a claim under 42 U.S.C. § 1985); *Buschi v. Kirven,* 775 F.2d 1240 (4th Cir.1985) (mere allegations of conspiracy are insufficient to support action under 42 U.S.C. § 1983); *Cf. Cochran v. Morris,* 73 F.3d 1310, 1317 (4th Cir.1996) (conclusory allegations insufficient to support claim that officials conspired to retaliate against inmate for filing of lawsuit).

■ It is unclear what provisions of section 1962 plaintiffs rely on as the predicate violation to establish a claim under section 1964(c). It appears that plaintiffs may be attempting to assert violations under sections 1962(c) and (d).[3] However, plaintiffs only have standing to assert a claim under section 1964 if they have been injured in their business or property. *Sedima,* 473 U.S. at 496, 105 S.Ct. at 3285.

Plaintiffs do not allege a single action on the part of the defendants to support their conspiracy claim. Indeed, the only discreet action that plaintiffs complain of is the fact that Greensville Correctional Center was placed on lockdown status on September 19, 1994. *Pls.' Compl. XXIV.* Plaintiffs vaguely allege threats, conspiracy, arson, and assaults were part of the actions of the defendants. *Pls.' Compl. XXXII.* Plaintiffs also allude to the defendants' failure to supervise employees, resulting in assaults on inmates, theft of inmate property, punishment without due process, denial of participation in programs, the importation and sale of illegal drugs and other contraband, and other unspecified violations. However, they do not indicate which defendants participated in these activities, when these events occurred or where these events occurred. Indeed, plaintiffs do not put forth a single allegation to establish a meeting of the minds between defendants such as would be necessary to establish a conspiracy.

■ In addition, plaintiffs lack standing to raise a claim under section 1 964. Plaintiffs do not allege that they were injured in their business. However, plaintiffs claim that they have a protected right to employment. However, prisoners do not have a constitutional right to work assignments. *See Gaston v. Taylor,* 946 F.2d 340 (4th Cir.1991)(en banc). It is clear that plaintiffs

---

2. 18 U.S.C. § 1964(c) provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States District Court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."

3. 18 U.S.C. § 1962(c) provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the ac-

tivities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

Section 1962(d) provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsections[sic] (a), (b), or (c) of this section."

do not have a protected property or liberty interest in their job assignments. *See* discussion *infra* pp. 10–11. Thus, plaintiffs have not been injured in their business or property. Accordingly, plaintiffs lack standing to raise a civil RICO claim. Defendants' motion to dismiss plaintiffs' RICO claim is **GRANTED.**

### C. Plaintiffs' Claims of Conspiracy

 Plaintiffs raise a claim pursuant to 42 U.S.C. § 1985. Plaintiffs allege that all the events described in their Complaint resulted from a conspiracy to deny them their constitutional rights. The lockdown of an institution is used as a preventative or control measure when less restrictive methods are considered to be insufficient under the circumstances. Moreover, plaintiffs' vague, conclusory assertions that all the actions of which they complain are part of a vast conspiracy is not sufficient to state a claim under § 1985. *Ballinger,* 815 F.2d 1001; *Buschi,* 775 F.2d 1240.

### D. Plaintiffs' Due Process Claims

Plaintiffs claim that defendants violated their right to due process of law, as guaranteed by the Fourteenth Amendment. The United States Supreme Court has articulated a standard for determining when a particular punishment deprives an inmate of "liberty" within the terms of the Fourteenth Amendment's Due Process Clause. *Sandin v. Conner,* 515 U.S. 2293, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The proper inquiry is whether the punishment "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at ——, 115 S.Ct. at 2300. For example, an inmate who is incarcerated subject to a lawful conviction has no liberty interest in being free from placement in segregation, because segregation is "within the range of confinement" an inmate should expect to result from conviction. *Id.* at —— ——, 115 S.Ct. at 2301–02. Clearly, inmates are not stripped of all their constitutional rights, but lawful incarceration requires withdrawing or limiting many privileges and rights, a retraction justified by the consider-

ations underlying our penal system. *Id.* at ——, 115 S.Ct. at 2301.

### 1. Employment

 With regard to the issue of whether inmates have a protected liberty interest in prison employment, one district court applying *Sandin* believed the Fourth Circuit would not find a protected liberty interest in retaining an acquired security classification and work release status. *See Knox v. Lanham,* 895 F.Supp. 750, 754 (D.Md.1995) (where practice was that participation in work release was required before inmates could obtain a parole recommendation, the court noted, without deciding the issue, that it was "inclined to believe that the Fourth Circuit, following *Sandin,* would hold that plaintiffs did not have a protected liberty interest in remaining in their classifications"). It is interesting to note that before *Sandin,* courts also did not find that any statute or regulation created a protected liberty interest in the provision of work opportunities and other means to earn good time credits. *See, e.g. Hewitt v. Helms,* 459 U.S. 460, 467, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983) (holding that the due process clause does not create a liberty interest in earning a certain number of good time credits); *Gaston,* 946 F.2d at 344 (holding that the Virginia work release statute did not create a liberty interest); *Gibson v. McEvers,* 631 F.2d 95, 98 (7th Cir.1980) ("An inmate's expectation of keeping a certain prison job does not amount to a property or liberty interest entitled to protection under the due process clause."); *Altizer v. Paderick,* 569 F.2d 812, 813 (4th Cir.), *cert. denied,* 435 U.S. 1009, 98 S.Ct. 1882, 56 L.Ed.2d 391 (1978) (inmate was not denied any constitutional right by action of prison administrators in removing him, without a hearing, from assignment to the inmate advisor program, because "[c]lassifications and work assignments of prisoners in [state penal institutions] are matters of prison administration, within the discretion of prison administrators, and do not require fact-finding hearings as a prerequisite for the exercise of such discretion"); *Ewell v. Murray,* 813 F.Supp. 1180, 1183 (W.D.Va.1993) ("Neither DOP 806 nor the Virginia Code creates a liberty interest in being placed in

any particular [good conduct allowance classification] or in earning any particular number of credits.")

■ Prisoners do not have a constitutionally protected interest in work release or assignments. *See Gaston*, 946 F.2d at 344. In addition, the lack of employment is not an atypical situation for inmates. Lack of employment is clearly "within the range of confinement" which can be expected by most inmates. *Sandin*, 515 U.S. at ———— ————, 115 S.Ct. at 2301–02. Accordingly, plaintiffs did not have a protected interest in their continued employment, and, thus, were not entitled to due process before their employment could be interrupted.

## 2. Institutional Lockdown

■ The question is whether the imposition of a lockdown "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at ————, 115 S.Ct. at 2300. If it does, then plaintiffs would have been entitled to due process before being placed on lockdown. In *Sandin*, the Supreme Court held that segregated confinement does "not present the type of atypical, significant deprivation" requiring due process. *Id.* at ————, 115 S.Ct. at 2301. The Court relied on, in part, the fact that disciplinary segregation generally mirrored conditions in both administrative and protective segregation. *Id.* Lockdown status, where inmates throughout the institution are required to remain in their cells and privileges are withheld, is essentially institution-wide segregation. This is certainly within the range of confinement that can be expected by any inmate during the course of his incarceration. This is especially true where, as in this case, a riot has occurred. The need to restore and maintain order until tensions have subsided is obvious. It is clearly in the best interests of both prison officials and inmates to make the institution safe and secure. Therefore, an institutional lockdown is within the normal range of incarceration. Plaintiffs were not entitled to due process prior to the imposition of an institutional lockdown.

## 3. Earning Good Conduct Allowances

■ There is not a protected liberty interest in remaining in or being assigned to a particular good conduct allowance class level. *Hewitt*, 459 U.S. at 467, 103 S.Ct. at 869; *James v. Robinson*, 863 F.Supp. 275 (E.D.Va.1994), *aff'd*, 45 F.3d 426 (4th Cir. 1994) (unpublished opinion); *Slezak v. Evatt*, 21 F.3d 590 (4th Cir.1994). In addition, plaintiffs' complaint is at best speculative. Plaintiffs do not claim that their good conduct allowance class levels were actually altered. They merely complain that employment and participation in rehabilitation programs are factors used to determine the level of good conduct allowance that an inmate will earn, and that the loss of opportunities for employment and rehabilitation may affect the rate at which they earn good conduct allowances. Accordingly, plaintiffs have failed to state a claim that they were denied due process.

## 4. Parole

■ The mere existence of a parole system does not create any interest protected by the Due Process Clause. *Greenholtz v. Inmates of Neb. Penal & Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Recognizing that "[i]f parole determinations are encumbered by procedures that states regard as burdensome and unwarranted, [states] may abandon or curtail parole," *Greenholtz*, 442 U.S. at 13, 99 S.Ct. at 2107, federal courts have treaded lightly in cases dealing with state parole and deferred to state agencies applying state law. *See Vann v. Angelone*, 73 F.3d 519 (4th Cir.1996).

With regard to the granting of parole in Virginia, Virginia law requires that

No person shall be released on parole by the Board until a thorough investigation has been made. . . . The Board shall also determine that his release on parole will not be incompatible with the interests of society or of the prisoner.

Va.Code Ann. Section 53.1–155(A). At most, inmates in Virginia have an expectation that they may at some time be released on parole according to the discretion of the Virginia Parole Board should the Board, in its discretion, determine that such release is in the

interests of society and the prisoner. *See id.; Gaston*, 946 F.2d at 344. Hence the use of the word "discretionary"[4] to describe the parole system of Virginia.

The Supreme Court revisited the due process analysis applicable in cases brought by inmates in *Sandin*, 515 U.S. ——, 115 S.Ct. 2293. The Supreme Court stated:

> we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause by its own force, nonetheless *imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.*

*Id.* at ——, 115 S.Ct. at 2300 (citations omitted) (emphasis added).

According to the *Sandin* analysis, it is not enough to simply argue that a statute or prison procedure limits the discretion of officials. An inmate must go one step further and also show that the actions of the state are "atypical" and impose a "significant hardship" on the inmate that would not otherwise be endured by an incarcerated individual. With regard to discretionary parole, "inmates generally possess no entitlement, but only a desire that a parole board will decide in their favor." *Vann*, 73 F.3d at 519. Further, when parole decisions are placed in the discretion of parole officials, "a prisoner cannot claim entitlement and therefore a liberty interest in the parole release." *Gaston*, 946 F.2d at 344. Accordingly, plaintiffs have failed to state a due process violation for denial of parole opportunities.

Plaintiffs have failed to establish that they were entitled to procedural due process prior to the imposition of an institutional lockdown and the resulting loss of employment. Accordingly, defendants' Motion to Dismiss plaintiffs' procedural due process claims is **GRANTED.**

### E. Plaintiffs' Eighth Amendment Complaints

Plaintiffs' Complaint is primarily concerned with the loss of employment resulting from the lockdown of Greensville Correctional Center. However, in ¶ XXIV, plaintiffs recite a laundry list of alleged violations concerning the conditions imposed upon them during the lockdown. Plaintiffs allege that the lockdown resulted in numerous violations of plaintiffs' constitutional rights including denial of recreation, commissary privileges, visitation, telephone access, access to the law library, mail, showers, rehabilitative programs, adequate diet, medical care, fresh air, personal hygiene products and cleaning products. These alleged violations continued for twenty-three days. Apparently, an unidentified plaintiff suffered physical, mental and emotional harm. Plaintiffs couch their complaint in terms of substantive and procedural due process. With regard to their claim of substantive due process violations, "it is now well established that the Eighth Amendment 'serves as the primary source of substantive protection to convicted prisoners', and the Due Process Clause affords a prisoner no greater *substantive* protection 'than does the Cruel and Unusual Punishments Clause.' " " *Williams v. Benjamin*, 77 F.3d 756, 768 (4th Cir.1996) (emphasis in original) (quoting *Whitley v. Albers*, 475 U.S. 312, 327, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986)). Accordingly, the court will consider plaintiffs' substantive due process claim as an Eighth Amendment claim. The court has already addressed the issue of procedural due process in terms of imposing a lockdown and the restrictions attendant to a lockdown.

Courts use the Eighth Amendment to scrutinize the treatment a prisoner receives in prison and the conditions of confinement. To prove cruel and unusual punishment in violation of the Eighth Amendment, plaintiffs must satisfy a two-prong test that has both an objective and a subjective component. The first prong, which is an objective inquiry,

---

4. A "discretionary" decision is one "[l]eft to or regulated by one's own discretion or judgment." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 376 (New College Edition 1976). Such "discretion" carries the "[f]reedom to act or judge on one's own ... [i]n accordance with one's own wishes or judgment." *Id.*

asks whether the deprivation alleged is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994); *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 2323–24, 115 L.Ed.2d 271 (1991). The inmate must be denied "the minimal civilized measure of life's necessities," *Wilson*, 501 U.S. at 298, 111 S.Ct. at 2324, and the deprivation must violate contemporary notions of decency. *Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981) (although the conditions may be restrictive and even harsh, they are part of the penalty that criminal defendants must pay for their offenses against society).

The second prong, a subjective inquiry, requires the inmate to demonstrate that the prison officials acted at least with deliberate indifference toward his or her needs. *Farmer*, 511 U.S. at 834, 114 S.Ct. at 1977; *Wilson*, 501 U.S. at 302–303, 111 S.Ct. at 2326–27. This subjective prong requires more than negligent conduct; deliberate indifference exists when a prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 835–37, 114 S.Ct. at 1977–79 (establishing a subjective recklessness standard for prison-condition cases); *Whitley*, 475 U.S. at 319, 106 S.Ct. at 1084 In addition, plaintiffs must produce evidence of serious or significant physical or emotional injury resulting from the challenged cruel and unusual prison conditions. *Strickler v. Waters*, 989 F.2d 1375, 1380–81 (4th Cir.), *cert. denied*, 510 U.S. 949, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993).

*1. Denial of Medical Care*

█ Deliberate indifference by prison personnel, including medical staff, to an inmate's serious illness or injury creates a cause of action under 42 U.S.C. § 1983 as cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104–05, 97 S.Ct. 285, 291–92, 50 L.Ed.2d 251 (1976). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to

fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir.1990). A plaintiff may demonstrate the deliberate indifference of the prison medical staff by either actual intent or reckless disregard. *Id.* "A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." *Id.* at 851–52; *see also Mitchell v. Aluisi*, 872 F.2d 577, 579 (4th Cir.1989). The deliberate indifference component involves a determination by the court of whether the prison official had a sufficiently culpable state of mind. *Wilson*, 501 U.S. at 297, 111 S.Ct. at 2323. In *Farmer*, 511 U.S. 825, 114 S.Ct. 1970, the Supreme Court looked to the subjective state of mind of the prison official:

[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference.

*Id.* at 837, 114 S.Ct. at 1979; *see also Taylor v. Freeman*, 34 F.3d 266, 271 (4th Cir.1994). However, mere malpractice or negligence in diagnosis or treatment does not state a constitutional claim. *Estelle*, 429 U.S. at 105–06, 97 S.Ct. at 291–92; *Miltier*, 896 F.2d at 852.

Plaintiffs have not alleged what medical treatment was required or denied. In addition, plaintiffs have not alleged that any of these defendants were personally involved in the denial of medical care. Plaintiffs' mere assertion is not sufficient to state a claim that they were denied medical care for a serious medical condition.

Apparently, one unidentified plaintiff suffered injuries. The injuries this plaintiff claims he suffered are "malnutrition, significant muscular atrophy and weight loss, acute and chronic musculoskeletal tension and pain, inanition, significant loss of physical coordination, headaches, extraordinary hair loss, and other deleterious physical ailments and effects, and plaintiff has suffered and contin-

ues to suffer, great mental distress, anxiety and anguish."

Plaintiffs do not indicate which plaintiff suffered injury. In addition, plaintiffs do not indicate what caused the various injuries. Plaintiffs' conclusory allegations are simply not the type of "serious harm" contemplated by *Farmer*. At most, the unidentified plaintiff has alleged that the lockdown was detrimental to his physical and psychological well-being. Plaintiffs are reminded that, to the extent that conditions of confinement are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their societal wrongs. *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399–2400, 69 L.Ed.2d 59 (1981). In short, plaintiffs have not alleged an injury that would give rise to a claim of constitutional magnitude.

### 2. Visitation Restrictions

█ Plaintiffs claim that visitation privileges were restricted as a result of the lockdown. The Constitution, however, does not guarantee inmates the right to unfettered visitation. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989); *White v. Keller*, 438 F.Supp. 110 (D.Md.1977), *aff'd*, 588 F.2d 913 (1978). Plaintiffs have failed to state a claim of constitutional magnitude.

### 3. Denial of Access to the Courts

█ States have a duty to provide inmates with either an attorney or access to law libraries to prepare for trial. *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). States need not provide both law libraries and advisors. *Smith v. Bounds*, 813 F.2d 1299, 1302 (4th Cir.1987) ("either remedy, law libraries or attorney assistance, could fulfill the constitutional right of access [to the courts]"); *Williams v. Leeke*, 584 F.2d 1336 (4th Cir.1978). To state a claim for denial of access to the courts, plaintiff must show he suffered specific harm or prejudice resulting from the alleged interference with his rights. *Strickler*, 989 F.2d at 1383–84. Plaintiffs, however, do not describe any specific consequences that resulted from defendants' actions. Indeed, plaintiffs do not even allege that any of them

had court cases pending at that time. Plaintiffs have failed to demonstrate harm or prejudice as a result of the denial of access to the law library.

### 4. No Personal Action on the Part of Defendants

█ Plaintiff have alleged a laundry list of additional deprivations, including denial of recreation, commissary privileges, telephone access, mail, showers, rehabilitative programs, fresh air, personal hygiene items and cleaning products.

Section 1983 liability is personal in nature, and the doctrine of *respondeat superior* is generally inapplicable to actions brought under the statute. *Monell v. Department of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978); *Lopez v. Robinson*, 914 F.2d 486, 494 (4th Cir.1990). Rather, to establish liability for civil rights violations, a prisoner must show that the defendant (1) personally violated a specific right under federal law; (2) implemented an official policy which resulted in a constitutional violation; or (3) tacitly authorized or demonstrated deliberate indifference to the unlawful conduct of subordinates. *See Gaston*, 918 F.2d at 29; *Slakan v. Porter*, 737 F.2d 368, 372–73 (4th Cir.1984), *cert. denied*, 470 U.S. 1035, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985); *Fisher v. Washington Metro. Area Transit Auth.*, 690 F.2d 1133, 1142–43 (4th Cir.1982). Moreover, supervisory officials are entitled to rely on the expertise of prison doctors in treating inmates and are not deliberately indifferent in failing to intervene in treatment. *Miltier*, 896 F.2d at 854–55.

Here, the Complaint names correctional officials who serve in a supervisory capacity. The Complaint alleges no specific act or omission on the part of the defendants which caused, directly or indirectly, injury to plaintiffs. Plaintiffs allege that these deprivations occurred because of the lockdown instituted by defendants. However, these allegations are conclusory. Plaintiffs have failed to produce any evidence showing that the named defendants participated in the denial of any rights or privileges to plaintiffs. Plaintiffs have failed to provide any specifics from which the court can find a cognizable claim.

The lockdown of an institution is used as a preventative or control measure when less restrictive methods are considered to be insufficient under the circumstances. Moreover, plaintiffs' belief that all the actions of which they complain are part of a vast conspiracy is not sufficient to state a claim under § 1983. *Ballinger*, 815 F.2d 1001; *Buschi*, 775 F.2d 1240. Plaintiffs have failed to allege anything beyond the fact that defendants instituted an institutional lockdown in the wake of a riot. Plaintiffs' allegations that other alleged deprivations occurring during the lockdown are attributable to the defendants, is conclusory. In addition, plaintiffs have failed to state what injury they suffered as a result of these alleged deprivations. Plaintiffs' claim that the institutional lockdown was a form of punishment fails to state a claim pursuant to the discussion of the *Eighth Amendment, supra*, at 835–836.

Accordingly, defendants' Motion to Dismiss plaintiffs' Eighth Amendment claims is **GRANTED**.

### F. The Screening Criteria

Plaintiffs allege that defendants instituted a screening criteria to determine which inmates would be released from lockdown and allowed to return to work. However, as discussed *supra*, at 833–834, plaintiffs do not have a constitutional right to being returned to general population status or to work release. Accordingly, there is no cognizable claim raised by this allegation.

Plaintiffs have failed to provide anything other than vague, conclusory allegations to support their Complaint. Therefore, defendants' Motion to Dismiss the Complaint for failure to state a claim upon which relief can be granted is **GRANTED**.

### IV. Conclusion

For the aforementioned reasons, the court **GRANTS** defendants' Motion to Dismiss the Complaint for failure to state a claim. This action is **ORDERED DISMISSED**.

Plaintiffs are advised that they may appeal from this Opinion and Final Order by forwarding a written notice of appeal to the Clerk of the United States District Court,

United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. Said written notice must be received by the Clerk within thirty (30) days from the date of this order.

IT IS SO **ORDERED**.