**John Wesley OWNBY, Jr., Plaintiff,**

v.

**James Guy COHEN, Jim Beck Incorporated, and W. Stephen Scott, Esq., Defendants.**

**Civil Action No. 98–0019–C.**

United States District Court, W.D. Virginia, Charlottesville Division.

Sept. 8, 1998.

---

John Wesley Ownby, Jr., Cumberland, VA, pro se.

Joseph W. Wright, III, H. Dill Battle, III, McGuire, Woods, Battle & Boothe, Charlottesville, VA, Frank B. Miller, III, Sands, Anderson, Marks & Miller, William D. Bayliss, Williams, Mullen, Christian & Dobbins, Patrick Dyer Allen, Williams, Mullen, Christian & Dobbins, Richmond, VA, for Defendants.

*MEMORANDUM OPINION*

MICHAEL, Senior District Judge.

This case comes before the court on the defendants' motions to dismiss and the plaintiff's cross-motion for partial summary judgment as to the first count of his complaint. The court finds that, even under a very liberal construction, plaintiff's complaint fails to state a federal claim on which relief can be granted. The RICO claims of the complaint, counts V and VI, provide the basis for this court's jurisdiction in this case. After dismissing the RICO claims, this court declines to exercise its discretion to decide the remaining state law claims in the complaint.

## I.

Plaintiff John Wesley Ownby, Jr. ("Ownby") brings this action *pro se*. Ownby is currently incarcerated in a federal prison in Maryland, but he resided in Virginia prior to his incarceration. Plaintiff Ownby and Defendant James Guy Cohen ("Cohen") formed a partnership in 1993 for the purpose of purchasing Jim Beck Inc. ("JBI"), a mechanical contracting firm incorporated in Virginia with its principal place of business in Charlottesville, Virginia. Upon purchase, Cohen acted as Vice President and Ownby as President of the company, with each acting as a director and owning 50 percent of the stock of the company. In August 1995, Ownby began experiencing personal legal problems of a criminal nature, unrelated to his position at JBI. Ownby had to reduce his role in day-to-day operations of JBI and eventually took a medical leave of absence, in part to deal with personal problems and in part due to pressure Cohen claimed he was receiving from creditors of JBI. On September 13, 1995, Ownby signed a letter of resignation as a director of JBI. Ownby claims that he resigned as a director on the advice of his counsel at that time, Mr. Atkins, and then-counsel for JBI, Mr. Carter. Ownby also claims that he would not have resigned were it not for Cohen's assurances, which Ownby construed as a verbal contract to the effect that Cohen would continue paying Ownby salaries and benefits as an employee until Cohen purchased Ownby's stock in JBI.

On October 7, 1995 Ownby received a letter from Cohen terminating him as an employee of JBI as of September 27, 1995. Ownby claims that although on medical leave, he had continued to provide services to JBI by working at home and after hours at the office through October 6, 1995. After receiving the letter of termination, Ownby discovered that his password had been removed from the company computer system and locks had been changed at the company office. Ownby attempted to pursue Cohen's verbal offer to purchase his stock and retained attorney Gregory Johnson for that purpose. In that regard, Johnson sent an October 27, 1995 letter to Stephen Scott, newly retained by Cohen as corporate counsel for JBI. Scott's November 6, 1995 response referred Ownby and Johnson to Helen Parrish as personal counsel to Cohen for purposes of the stock buy-out. Conversations between Johnson and Parrish in November 1995 did not result in any agreement with regard to a stock purchase.

Concerned about his termination and the lack of progress in negotiations for a stock purchase, Ownby decided to attempt to take back his seat as a director of JBI and exercised his right as a stockholder under company bylaws to call a special stockholders' meeting to elect directors. The meeting was held December 5, 1995. Cohen and Ownby each nominated and voted for himself as director. Cohen, his counsel Parrish, and the counsel he had retained for JBI, Scott, interpreted the election as invalid because there was no majority for either candidate. Therefore, Cohen, Parrish, and Scott prevented Ownby from returning to his position as a director.

On December 6, 1995, Ownby, through counsel, delivered a written offer to sell his stock in JBI to Cohen pursuant to Section 2.7 of the "Stockholders [sic] Agreement" ("SA")[1] for $50,000, plus the amount still owing on the 1993 purchase of JBI, and other consideration. On December 19, 1995 Ownby received a Notice of Mandatory Buy-out from JBI pursuant to Section 2.6 of the Stockholder's Agreement based on Ownby's "disability."[2] Ownby responded to the Notice of Mandatory Buy-out in a December 20, 1995 letter to Scott stating that Section 2.6 did not apply because Ownby was not disabled as defined in that section. Other than the Notice of Mandatory Buy-out, neither Cohen nor JBI responded to Ownby's offer to sell pursuant to Section 2.7 within the time allotted by that Section.

Nonetheless, Cohen and JBI proceeded with the attempted mandatory buy-out by hiring an appraiser in January 1996. Ownby, meanwhile, gave notice that he intended to proceed with the next step under Section 2.7, allowing a stockholder whose offer for sale is not accepted to instead purchase the other stockholder's shares on the terms of the unaccepted offer. Neither Cohen nor JBI nor their counsel responded to Ownby's notice.

On March 19, 1996 JBI, through Cohen as Director and President, filed for bankruptcy. Ownby participated in bankruptcy proceedings by objecting on August 14, 1996 to the First Disclosure Statement and Plan of Reorganization, by objecting again September 5, 1996 to the Amended Disclosure Statement and Plan of Reorganization, and by filing a final objection December 10, 1996. Ownby also filed a Motion to Dismiss the bankruptcy action on November 1, 1996. The Bankruptcy Court denied the Motion to Dismiss and overruled all of Ownby's objections to the reorganization of JBI. This court denied Ownby's appeal of the bankruptcy court's orders and the Fourth Circuit affirmed that decision. The reorganization thus approved provides that Ownby's stock be redeemed for $100.00.

Ownby originally brought six causes of action. In his first count, Ownby claims breach of the "Stockholders [sic] Agreement" ("SA") in Cohen's failure to respond to Ownby's offer pursuant to Section 2.7 to sell his shares and subsequent refusal to honor Ownby's right to reciprocal purchase of Cohen's shares. Ownby claims damages of $566,000 for this count based on the decline in value of his shares. Ownby brings a second claim of breach of the SA based on the alleged failure of Cohen to supply monthly statements to stockholders in accordance with Section 2.4 and seeks $360,000 for this count, again based on the loss of value of his stock in JBI. In the third count, Ownby claims he is entitled to $30,400 in lost wages and benefits based on Cohen's breach of the alleged verbal contract to continue to employ Ownby until Cohen purchased his stock. The fourth cause of action against Helen Parrish was

1. Section 2.7 of the SA reads as follows: *"Buyout: Dissatisfaction.* If a Stockholder ("Transferor Stockholder") desires to sell his shares of the Corporation's stock, for any reason other than death, disability, or bankruptcy, he shall first offer in writing such shares for sale to the Corporation and to the other parties to this agreement at the price set forth in the offer. Within thirty (30) days after the receipt of the Transferor Stockholder's offer, the Corporation may, at its option, elect to purchase the shares offered by the Transferor Stockholder at the price and terms set forth in the offer. If the Corporation and the other Stockholders shall not come individually or together and purchase (for reasons other than the Transferor Stockholder's default hereunder) within the prescribed time periods, all of the shares of stock covered by the offer, the Transferor Stockholder shall purchase all of the shares [sic] the Corporation's stock owned by the other Stockholders at the price per share set forth in the Transferor Stockholder's offer within sixty (60) days after the date of the other Stockholder's receipt of the Transferor Stockholder's offer."

2. *Section 2.6 reads: "Mandatory Buy-out: Disability.* If a Stockholder is deemed to be disabled and is unable to perform his or her duties as an employee of the Corporation for a period of ninety (90) days, as determined by a licensed physician selected by the Corporation, the Corporation shall purchase from the disabled Stockholder and the disabled Stockholder shall sell to the Corporation, all of the disabled Stockholder's shares of the Corporation's stock. The purchase price for the shares purchased under this paragraph shall be determined and paid as set forth in Section 2.5." Section 2.5 provides that such sales shall be at fair value, as determined by agreement of all Stockholders or by agreement of appraisers designated by each stockholder.

dismissed by this court's April 22, 1998 order granting Ownby's motion to voluntarily dismiss Parrish as a defendant.

Ownby's fifth cause of action alleges that Cohen violated 18 U.S.C. § 1962(b) of the Racketeer Influenced and Corrupt Organizations Act (RICO) when he engaged in a pattern of racketeering activity in order to acquire Ownby's interest in JBI. In support of the fifth count, Ownby alleges ten predicate acts carried out by Cohen, each of which he characterizes as racketeering, indictable under RICO, namely: (1) bankruptcy fraud in violation of 18 U.S.C. § 152; (2) breach of contract as alleged in the first count; (3) breach of contract as alleged in the second count; (4) breach of contract as alleged in the third count; (5) breach of contract and securities fraud in Cohen's refusal to abide by the terms of Section 2.6 of the Stockholder's Agreement; (6) breach of fiduciary duty; (7) violation of federal mail fraud statutes, 18 U.S.C. § 1341 in sending the Plan of Reorganization and letter of termination through the U.S. mail in furtherance of his scheme to defraud Ownby; (8) violation of federal wire fraud statutes, 18 U.S.C. § 1341, in using the telephone to communicate with Ownby, his attorneys, and his psychologist; (9) violation of the Federal Tax Code when Cohen accepted payments and gifts from customers in exchange for JBI's services without reporting such payments to the I.R.S.; (10) further violation of wire and mail fraud statutes and credit card fraud when Cohen refused to reimburse Ownby for amounts charged on behalf of JBI on Ownby's personal American Express card. Ownby claims this scheme began in the fall of 1995 and had as its goal the acquisition of Ownby's shares in JBI. Ownby seeks treble damages in count five totaling $1,788,000.

Ownby brings a sixth count against Stephen Scott, who served as counsel for JBI beginning in the fall of 1995. Count VI is also a RICO claim, for conspiracy to violate 18 U.S.C. § 1962(b) in violation of 18 U.S.C. § 1962(d). Ownby alleges that Scott agreed with Cohen in the overall scheme to defraud and committed several predicate acts, including filing for bankruptcy and preparing the reorganization plan, in furtherance of that overall scheme. For count six, Ownby claims $1,098,000 in damages.

Defendants Cohen and Scott each answered the complaint in March 1998, denying any violations of state or federal law and asserting defenses of failure to state a claim, collateral estoppel, res judicata, judicial estoppel, laches, statute of limitations, equitable estoppel, waiver, standing, unclean hands, lack of consideration in contract, statute of frauds, privilege, and failure to join an indispensable party. In addition, Defendant Scott filed a Motion to Dismiss and for Entry of Injunction on April 13, 1998, pursuant to Federal Rules of Civil Procedure (Fed.R.Civ.P.) 12(b)(6) and 65. Plaintiff responded in opposition to Scott's Motion on April 20, 1998 and Scott filed a rebuttal brief in support of his Motion on April 29, 1998. Defendants Cohen and JBI filed their Motion to Dismiss on May 15, 1998, citing Fed.R.Civ.P. 12(b)(6) and 12(b)(1). On June 12, 1998 plaintiff responded to Cohen and JBI's Motion to Dismiss, also filing his own motion for partial summary judgment as to the first cause of action of his complaint with an accompanying brief. Cohen and JBI responded to plaintiff's motion for partial summary judgment with a June 30, 1998 memorandum. Cohen and JBI also filed a July 7, 1998 reply brief in support of their motion to dismiss. Plaintiff filed a rebuttal brief in support of his motion for partial summary judgment on July 21, 1998.

## II.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "failure to state a claim upon which relief can be granted" provides grounds for dismissal. For purposes of a Rule 12(b)(6) motion, all factual allegations in the plaintiff's complaint must be accepted as true. *See Estate Const. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 217–18 (4th Cir.1994). The plaintiff's complaint should be construed liberally, and ought not be dismissed unless it is apparent that the plaintiff "would not be entitled to relief under any facts which could be proved in support of [his] claim[s]." *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir.1991); *see also, Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2

L.Ed.2d 80 (1957), *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985), *cert. denied*, 475 U.S. 1088, 106 S.Ct. 1475, 89 L.Ed.2d 729 (1986).

■ Ownby argues based on a line of cases involving *pro se* plaintiffs that *pro se* complaints are held to a less strict standard on motions to dismiss than other complaints, implying that it would be improper almost *per se* to dismiss *pro se* complaints. The Fourth Circuit cases cited by plaintiff that apply a less stringent standard to pleadings drafted by *pro se* plaintiffs emphasize that such a generous standard is most appropriate in civil rights actions. *See, e.g., Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978), *cert. denied sub nom., Moffitt v. Loe*, 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980) and *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.1978), *cert. denied*, 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978), (both citing *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). A complaint like this plaintiff's, based on breach of contract and fraud claims rather than any violation of his civil rights, is not generally entitled to special consideration beyond the usual construction of a complaint upon a motion to dismiss. *See Alley v. Angelone*, 962 F.Supp. 827, 830 (E.D.Va.1997) (granting defendants' motion to dismiss RICO and other claims brought by prisoners, stating that the relevant inquiry was whether it appeared that the plaintiffs could prove no set of facts in support of their claim that would entitle them to relief, and that "dismissal may be appropriate where the complaint contains a detailed description of underlying facts which fail to state a viable claim"); *see also, Kerr v. Orellana*, 969 F.Supp. 357, 358 (E.D.Va.1997).

Plaintiff also attempts to convert the court's consideration of motions to dismiss under Rule 12(b)(6) to consideration of motions for summary judgment. However, plaintiff's "Affidavit Pursuant to Fed.R.Civ.P. Rule 56(c)" is the only piece of evidence in this case that was not filed as an attachment to the complaint, answer, or pleadings. That

affidavit supplies no new material facts beyond those already contained in the complaint. As in *Simons v. Montgomery County Police Officers*, the district court can appropriately dispose of the case on a 12(b)(6) motion where "all the relevant facts in the case were embraced in the complaint or its attachments," and allowing the plaintiff additional opportunity to supply evidence "would have been a useless gesture." 762 F.2d 30, 32 (4th Cir.1985), *cert. denied*, 474 U.S. 1054, 106 S.Ct. 789, 88 L.Ed.2d 767 (1986). *See also, Davis v. Hudgins*, 896 F.Supp. 561, 566 (E.D.Va.1995) (court can rely on documents attached as exhibits or incorporated by reference in considering motion to dismiss for failure to state a claim upon which relief can be granted), *aff'd.*, 87 F.3d 1308, 1996 WL 327205 (4th Cir.1996).

### III.

■ Among the bases for jurisdiction, plaintiff claims diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1). However, prisoners usually retain the domicile they had prior to incarceration. *See* 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure*, § 3618 (1984), *Price v. Carr–Price*, 23 F.3d 402, No. 94–1152, 1994 WL 183468 at FN* (4th Cir.1994) (affirming dismissal of action brought by prisoner against his wife, noting that diversity jurisdiction exists only when prisoner is domiciled, prior to incarceration, in state other than where defendant resides). Prior to incarceration, plaintiff was a resident of Virginia. He has made no showing of any intention to change his domicile upon his release.[3] Therefore, there is no diversity of citizenship for purposes of this civil action against defendants who are all residents of Virginia. Jurisdiction therefore rests on plaintiff's RICO claim, and the doctrine of supplemental jurisdiction. If the court finds that plaintiff's RICO claim should be dismissed, it may decline to exercise supplemental jurisdiction over the remaining, essentially state law claims of the complaint. *See* 28 U.S.C. § 1367(c)(3); *see also Estate Constr.*

---

**3.** Quite to the contrary, this court is aware due to its role in sentencing Ownby in an unrelated criminal matter, that after he has served his federal sentence, Ownby will be released to the custody of the Commonwealth of Virginia to serve a state sentence.

*Co.,* 14 F.3d at 217 (affirming district court's dismissal without prejudice of remaining state claims after dismissing all federal claims in the complaint); *Shanaghan v. Cahill,* 58 F.3d 106, 109, 112 (4th Cir.1995) (supplemental jurisdiction means courts have discretion to retain or dismiss state law claims when federal basis for jurisdiction drops away, which should include consideration of factors such as judicial economy, fairness to parties, convenience, and existence of state limitations bars). This analysis of defendants' motions to dismiss logically begins with an examination of the sufficiency of counts five and six of the complaint, plaintiff's RICO claims.

Congress passed the RICO statute, 18 U.S.C. § 1961 *et seq.* in 1970 as part of the Organized Crime Control Act. However, RICO is not limited in application to those typically considered organized criminals. RICO's civil remedies section allows "any person injured in his business or property" as a result of RICO-prohibited activities to sue in federal court for treble damages and attorney's fees. *See* 18 U.S.C. § 1964(c). The relevant prohibited activities in this case are found at 18 U.S.C. § 1962(b) and (d). Ownby alleges that Cohen violated § 1962(b), which makes it unlawful to, "through a pattern of racketeering activity ... acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." Ownby alleges that Scott violated § 1962(d), which makes it unlawful "to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section" by conspiring with Cohen to deprive Ownby of his interest in JBI.

To state a claim for damages under RICO, a plaintiff must allege that each and every one of seven constituent elements exists:

(1) that the defendant (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce. 18 U.S.C. § 1962(a)–(c).

*Moss v. Morgan Stanley Inc.,* 719 F.2d 5, 17 (2nd Cir.1983), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684. (1984). *See also Davis v. Hudgins,* 896 F.Supp. at 567. The Supreme Court has provided helpful guidance in determining what constitutes a pattern of racketeering activity under RICO. In *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 238, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), the Supreme Court adopted the dictionary meaning of a pattern, as an "arrangement or order of things," adding that it is not the number but the relationship between alleged predicate acts that makes a pattern. The court established a two prong test for the existence of a pattern of racketeering activity: "continuity plus relationship." *Id.* at 239, 109 S.Ct. 2893.

The crucial issue raised by Ownby's claim under § 1962 is the requirement that he show a "pattern of racketeering activity." To establish a RICO pattern, a plaintiff must show not only that there are predicate acts forming a pattern, but that these predicate acts "amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity." *Parcoil Corp. v. NOWSCO Well Serv.,* 887 F.2d 502, 503 (4th Cir.1989) (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.)* (emphasis added). In applying the continuity requirement established by the Supreme Court in *H.J.,* the Fourth Circuit has dismissed several cases that alleged predicate acts extending over a few months and threatening no future criminal conduct. *See, e.g., Parcoil Corp.,* 887 F.2d at 504 (listing cases in which the question of continuity had been considered previously by the Fourth Circuit). The Fourth Circuit has also "deliberately declined to adopt any mechanical rules to determine the existence of a RICO pattern, holding instead that the issue is a 'matter of criminal dimension and degree' to be decided on a case by case basis." *Davis v. Hudgins,* 896 F.Supp. at 568 (quoting *Brandenburg v. Seidel,* 859 F.2d 1179, 1185 (4th Cir.1988)). In determining whether there is sufficient continuity in a pattern of alleged racketeering activity, the court should consider factors including "the number and variety of predicate acts and the length of time over which they were committed, the number of putative victims, the presence of separate schemes,

and the potential for multiple distinct injuries," among others. *Id. See also, Myers v. Finkle,* 758 F.Supp. 1102, 1113 (E.D.Va.1990) (dismissing complaint alleging fraud with respect to fifteen investments over four years involving three victims because of the "unity and narrow focus of the scheme," its "single goal" and lack of any threat of long-term or ongoing criminal conduct), *rev'd. on other grounds,* 950 F.2d 165 (4th Cir.1991).

The Supreme Court's decision in *H.J.* put an end to the requirement previously imposed by the Fourth Circuit and other courts of appeals in reviewing RICO cases that more than one scheme was necessary to constitute a pattern of racketeering. However, the Fourth Circuit's concern about applying RICO too broadly, expressed in cases prior to *H.J.,* nonetheless remains valid:

> this circuit will not lightly permit ordinary business contract or fraud disputes to be transformed into federal RICO claims... the... penalties of RICO are reserved for schemes whose scope and persistence set them above the routine... A great many ordinary business disputes arising out of dishonest business practices or doubtful accounting methods, such as have until the present been redressed by state remedies, could be described as multiple individual instances of fraud, if one chose to do so. But to adopt such a characterization would transform every such dispute into a cause of action under RICO.

*Flip Mortgage Corp. v. McElhone,* 841 F.2d 531, 538 (4th Cir.1988) (internal quotes and citations omitted).

■ Upon examination, Ownby's allegations of ten predicate acts fails to add up to a pattern of racketeering activity that meets the continuity requirement established by case law. Predicate Acts II, III, IV, and VI

fall away because breach of contract and breach of fiduciary duty are not among the crimes recognized as racketeering under RICO. *See LaVay Corp. v. Dominion Fed. Savings & Loan,* 830 F.2d 522, 529 (4th Cir.1987) ("under no circumstances could a breach of fiduciary duty constitute a pattern of racketeering activity"); *Manion v. Freund,* 967 F.2d 1183, 1186 (8th Cir.1992) ("breach of fiduciary duty is not one of the specified state crimes listed in the definition of 'racketeering activity,' 18 U.S.C. § 1961(1), and thus could not have supported a civil RICO claim"), *Selman v. Am. Sports Underwriters, Inc.,* 697 F.Supp. 225, 232 (W.D.Va., Michael, J., 1988) (breach of employment contract does not satisfy RICO's pattern requirement), *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.,* 904 F.2d 786, 791 (1st Cir.1990), *cert. denied,* 498 U.S. 992, 111 S.Ct. 536, 112 L.Ed.2d 546 (1990) (breach of contract does not constitute a scheme to defraud). Predicate Act IX alleging violation of the Federal Tax Code also fails to meet the statutory definition of racketeering activity, which refers only to state law and titles 18, 29, and 11 of the United States Code and does not list title 26. *See* 18 U.S.C. § 1961(1).[4]

While Ownby also alleges acts that can qualify as racketeering activity under the definition at 18 U.S.C. § 1961(1), these predicate acts fail to satisfy the continuity requirement of a RICO claim. Predicate Acts I (bankruptcy fraud), V (securities fraud), VII (mail fraud), and VIII (wire fraud) barely merit the court's discussion. However, even accepting the more absurd [5] of plaintiff's allegations as true and ignoring the fact that the bankruptcy proceedings have been approved on review without any finding of fraud not only by this court but by the Court of Ap-

---

4. The allegation of tax code violations fails for the additional reason that such an act is not related to the other predicate acts alleged in forming a pattern of racketeering activity that injured plaintiff. Any failure by Cohen to properly report income on his taxes cannot possibly be construed to harm or injury Ownby.

5. At least one court categorically dismissed the mail fraud allegation in a RICO claim with facts bearing an almost uncanny resemblance to this case. In *Frank v. D'Ambrosi,* 4 F.3d 1378, 1385

(6th Cir.1993), the court called a mail fraud claim "absurd" when it was based on the mailing of a letter concerning plaintiff's employment at a soon-to-be dissolved company in which he held a 50 percent stake. That plaintiff, like Ownby, was alleging that the letter constituted mail fraud because it was part of an attempt to "wrest control" of that company. Ownby's claim that by mailing him a letter of termination, Cohen engaged in mail fraud is also almost patently absurd.

peals, these remaining acts would not constitute a pattern of racketeering activity. Considering each of the factors recommended by the Fourth Circuit in analyzing continuity, the court finds that there are only three or four predicate acts, committed over the course of a few months, affecting only one putative victim, and forming a single, narrow scheme with no potential for future criminal activity. Negotiations concerning a possible buy-out of Ownby's shares in JBI lasted only a few months before the initiation of bankruptcy proceedings. The proposed reorganization of JBI that included a buy-out of Ownby's shares was accomplished through litigation in bankruptcy court, not through any further predicate acts of the defendants. Ownby himself pinpoints the fall of 1995 as the beginning of the scheme and this court finds based on the lengthy and detailed complaint in this case that the putative scheme was completed once bankruptcy proceedings began in the spring of 1996. This time period does not constitute the "substantial period of time" deemed necessary by the Supreme Court to show continuity. *H.J.* at 242, 109 S.Ct. 2893. Even accepting as true Ownby's allegation that the injury he suffered due to the loss in value of his shares in JBI was proximately caused by a deliberate scheme by Cohen—rather than by the natural decline of a company on its way to bankruptcy as defendants claim—the complaint fails to allege facts sufficient to make out a pattern of racketeering under RICO.

This court can confidently state that the plaintiff would not be entitled to relief under any facts which could be proved in support of his RICO claim and therefore will not reach the merits of the claim in other respects.[6] The court does not need to address the defenses and other arguments raised by the defendants, nor scrutinize the merits of the predicate acts alleged in the complaint because the RICO claim does not survive even under a liberal construction due to the lack of continuity of the alleged scheme.[7]

■ In his reply to defendants' motions to dismiss, plaintiff argues in the alternative that if his complaint is deemed insufficient, he should be granted leave to amend rather than dismissal. However, he does not propose any additional allegations he would make if given the opportunity to amend. In such circumstances, "justice does not require that plaintiff be allowed to amend" his complaint. *See, e.g., Kline v. Nationsbank of Virginia,* 886 F.Supp. 1285, 1289 (E.D.Va. 1995).

## IV.

■ After dismissal of the RICO counts, plaintiff is left with what amounts to a fairly straightforward claim for breach of contract. Because the remaining counts involve questions of state law and there is no diversity, this court will dismiss the remaining counts for lack of jurisdiction. Nothing about this case directs this court to exercise its discretion to retain the state law claims when the case has not proceeded past the motion to dismiss stage.[8]

---

**6.** It is not even clear that plaintiff has standing to sue under RICO. In one Sixth Circuit case, a complaint was dismissed because the court found that an employee who lost his position when a corporation went bankrupt had no standing because the injuries he experienced were not direct results of RICO activity. *See Frank v. D'Ambrosi,* 4 F.3d at 1385; *see also Rand v. Anaconda–Ericsson, Inc.,* 794 F.2d 843, 849 (2nd Cir.1986). (diminution in value of corporate asset is insufficient direct harm to give a shareholder standing to sue under RICO), *cert. denied,* 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986).

**7.** For example, the court does not reach the issue of whether plaintiff is estopped from making the same claims in this civil case as he made or could have made in bankruptcy court. The court notes that this argument may have merit at least insofar as Predicate Act I, bankruptcy fraud, is

concerned. *See, e.g.,* 637 F.Supp. 710, 714 n. 5 (E.D.Va.1986), (listing other RICO cases giving preclusive effect to prior judgments, including judgments in bankruptcy proceedings) *aff'd,* 828 F.2d 1071 (1987), *cert. denied,* 484 U.S. 1009, 108 S.Ct. 706, 98 L.Ed.2d 657 (1988), *Barnett v. Stern,* 909 F.2d 973, 979 (7th Cir.1990) (claims which would have been "core proceedings" in bankruptcy court are barred from being raised in subsequent proceedings by res judicata). Defendant Scott also points out that the complaint fails to allege with any specificity that there was the requisite "meeting of the minds" of Scott and Cohen to allege a conspiracy. *See, e.g., Alley v. Angelone,* 962 F.Supp. at 832.

**8.** In particular, the court notes that among the factors it should consider according to *Shanaghan v. Cahill,* 58 F.3d 106, in addition to judi-

Defendants' motions to dismiss shall be granted. Plaintiff's motion for partial summary judgment shall be denied.

cial economy, is the existence of state limitations bars. Section 8.01–246(2) provides a five-year limitations period for breach of contract claims. Thus, plaintiff is still within the limitation period for bringing his contract claims in state court.